**Ronnie Lee WALKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 58881.

Court of Criminal Appeals of Texas,
Panel No. 1.

Dec. 12, 1979.

Rehearing Denied Jan. 23, 1980.

Woody R. Denson, Houston, for appellant; Cathy Young Jones, Houston, of counsel.

Carol S. Vance, Dist. Atty., Calvin A. Hartmann, and Terry G. Wilson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DOUGLAS and DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

Walker was convicted of aggravated rape. The jury, after finding that appellant had previously been convicted of rob-

bery by firearms, assessed punishment at ninety-nine years.

Appellant now contends that the evidence adduced at trial was insufficient to support the conviction.

The complainant identified appellant as the man who accosted her at gunpoint on the street as she walked home from the market, took her billfold, forced her to admit him to her apartment, forced her to remove her clothing, tied her hands behind her back, and raped her. Complainant testified to an act of penetration, that she was not married to appellant, and that she did not consent to intercourse.

Appellant now contends that complainant's failure to report the incident to the police until some two weeks after the incident, when complainant heard a news report that a man suspected of committing rapes in her area of the city was in custody, complainant's failure to preserve as evidence the T-shirt which she had been wearing and with which appellant had wiped himself off after the rape, and complainant's failure to be examined by a doctor after the rape renders the complainant's testimony insufficient to support appellant's conviction. The contention is without merit.

■ The jury was able to evaluate the credibility of the complainant. The complainant's testimony was sufficient to support their verdict.

Walker next contends that the admission of evidence relating to seven extraneous transactions was error.

In *Albrecht v. State*, 486 S.W.2d 97 (Tex. Cr.App.1972), we said:

"This court has consistently held that an accused is entitled to be tried on the accusation made in the state's pleading and that he should not be tried for some collateral crime or for being a criminal generally. E. g. *Rodriguez v. State*, Tex. Cr.App., 1972, 486 S.W.2d 355; *Ford v. State*, Tex.Cr.App., 484 S.W.2d 727; *Jones v. State*, Tex.Cr.App., 481 S.W.2d 900; *Jones v. State*, 479 S.W.2d 307; *Powell v. State*, Tex.Cr.App., 478 S.W.2d 95; *Chandler v. State*, Tex.Cr.App., 417 S.W.2d 68; *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836. Evidence of other crimes committed by the accused may be admitted, however, where such evidence is shown to be both material and relevant to a contested issue in the case. E. g., *Grayson v. State*, Tex.Cr.App., 481 S.W.2d 859; *Jones v. State*, Tex.Cr.App., 481 S.W.2d 900; *Howard v. State*, 37 Tex.Cr.R. 494, 36 S.W. 475."

Six of the extraneous transactions were offered as tending to show the identity of appellant as the assailant in the case at bar. Appellant contends the issue of identity was not raised; the State contends that the manner and effect of the cross-examination of the complainant raised the issue.

■ Cross-examination of State's witnesses can raise the issue of identity. *Ferrell v. State*, 429 S.W.2d 901 (Tex.Cr.App. 1968); *Simmons v. State*, 457 S.W.2d 570 (Tex.Cr.App.1970); *Gillon v. State*, 492 S.W.2d 948 (Tex.Cr.App.1973). But where cross-examination fails to impeach the witness, *Rogers v. State*, 484 S.W.2d 708 (Tex. Cr.App.1972), *Caldwell v. State*, 477 S.W.2d 877 (Tex.Cr.App.1972), or only one of several witnesses is impeached in his identification, *Redd v. State*, 522 S.W.2d 890 (Tex.Cr. App.1975); *Hickombottom v. State*, 486 S.W.2d 951 (Tex.Cr.App.1972), cross-examination of a State's witness will not in itself support the introduction of extraneous transactions on the issue of identity.

The complainant was not impeached in any material detail of her testimony by cross-examination by appellant's counsel. The effect of the cross-examination was insufficient to raise the issue of identity. *Rogers v. State*, supra. The *manner* of cross-examination, however, is another story.

During the cross-examination of the complainant, the following colloquy occurred:

"Q. Let me ask you something: If the person who assaulted you—would you stand up, Mr. Walker? Would you roll your sleeves up? Would you step over here, Mr. Walker? If the man who assaulted you had tattoos all over his arm—may the record reflect on his left arm, on the left forearm, there's a visible tattoo roughly four or five inches long that says 'Black Rose.' On his left hand there is a heart shaped approximately one inch by one and a half inches with an arrow going through it. Below that is a distinguishable B plus R and above that is a line that's roughly two and a half inches.

It looks like it, but it's not a scar. It's a tattoo on the left four fingers. There are four tattoos that have the letters L-o-v-e. Now, on the right hand there is a visible tattoo approximately two and a half, three inches, maybe longer, tattoo that says 'Brenda.' Now, I also want to ask you about—you didn't mention anything visible about his face. Anything specific? You say you didn't remember anything, yet you did give some other details. You had a lot of time to describe the scene and observe it. The defendant, for the record, has a scar on his right lower lip which is quite noticeable. It's roughly—

"MR. WILSON: Your Honor, I object to counsel's editorial comments.

"THE COURT: Sustained as to that.

"MR. DENSON: Well, for the record Your Honor, there is a scar on the left right cheek that counsel—is very visible.

"MR. WILSON: Please the Court, I again to (sic) object to counsel testifying. He'll have his opportunity if he wants to.

"MR. DENSON: At this time, Your Honor, please the Court, I would like to have Mr. Walker stand over by the jury and let the jury see him and they can make their conclusion at a later time. Mr. Walker, if you would, put your hand out. There's a scar on the right side of the lip. You can take your chair now.

" * * *

"Q. And in your description to the police department and your description here on the stand today, you didn't mention anything about that tooth or any visible scars on the face or anything of that nature, did you?

"A. I wasn't looking at his hands.

"Q. I see. What were you looking at?

"A. I was looking at his face.

"Q. And you didn't notice—did you see the scar that I spoke of?

"A. No. I didn't.

"Q. You can't see it from here?

"A. No.

"Q. Mr. Walker, would you stand up, please. When does it become visible to you? Can you see it at this point.

"A. No. I can't.

"Q. Still can't see it? Can you see it at this point?

"A. I can see it a little bit. Yes.

"Q. The person that assaulted you obviously was much closer than this?

"A. Yes.

"Q. You didn't notice the scar then? Sit down, please."

In *Lusk v. State*, 511 S.W.2d 279 (Tex.Cr.App.1974), a defense witness testified that the defendant walked with a limp. The complainant testified that she saw no limp. We held that the testimony had raised the issue of identity. The demonstration of defense counsel in the case at bar was the functional equivalent of the witness' testimony in *Lusk*, and we hold that the issue of identity was raised sufficiently to allow the introduction of extraneous offenses relevant to that issue.

Walker contends that even if identity was raised as an issue, the extraneous transactions or offenses proved lacked common distinguishing characteristics.

In *Cobb v. State*, 503 S.W.2d 249 (Tex.Cr. App.1974), we said:

"The rule is that evidence of another crime is admissible to prove identity if identity is in issue and if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. See *Ford v. State*, 484 S.W.2d 727 (Tex. Cr.App.1972); *Lancaster v. State*, 82 Tex. Cr.R. 473, 200 S.W. 167 (1918). We reiterate: (1) identity must be in issue; and (2) there must be distinguishing characteristics common to both the extraneous offense and the offense for which the accused is on trial."

In *Ransom v. State*, 503 S.W.2d 810 (Tex. Cr.App.1974), affirming the use of extraneous offenses to prove identity, we said:

"This court has had occasion in the past to note that evidence of an extraneous offense is admissible to prove identity, when identity is an issue, only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. See *Ford v. State*, 484 S.W.2d 727, 729 (Tex.Cr.App.1972).

" ' . . . That is, if it is established that the accused committed an extraneous offense, and that there is some

distinguishing *characteristic* common both to it and the offense for which the accused is on trial, then an inference may be drawn that the accused was the person who committed the primary offense. . . .' (Emphasis supplied) "In the instant case both offenses were robberies committed at gunpoint in Dallas three days apart, while appellant, identified as the perpetrator of both, was aided by a confederate. In *Ford v. State,* supra, it was pointed out the common distinguishing characteristic may be the proximity in time and place *or* the common mode of the commission of the offenses. It would appear that both are present here."

■ The common characteristics in the instant case are more compelling than those in *Ransom.* All the transactions took place at night, in the same area, within a period of one month. In each case appellant was alone and carried a small gun. The victims were tied in a similar manner, and robbery preceded rape in the four instances in which the victim was raped. Appellant took all coins but pennies from the victims who had coins. The admission of the six extraneous transactions which amounted to offenses was not error.

■ The seventh extraneous transaction was offered for a different purpose. Harris County sheriff's deputies testified that appellant attempted to escape while being detained for trial. Evidence of flight or escape is admissible as implying knowledge of guilt. *Fairris v. State,* 515 S.W.2d 921 (Tex.Cr.App.1974). The admission of evidence of appellant's attempted escape was not error.

Walker next contends that his arrest was unlawful and that evidence seized at the time of his arrest or in the subsequent inventory search of his car, including the handgun identified by the complainant as similar to the one exhibited to her by Walker, was erroneously admitted.

At the hearing on appellant's motion to suppress the evidence seized at his arrest, Officer M. A. Martin testified that on March 29, 1977, he and his partner were patrolling the Montrose-Westheimer area when they saw appellant walking on the street. Appellant fit the description of a suspect wanted in connection with several rapes in the patrol area, and his clothing fit the description given by some of the victims.

As they approached appellant, the officers could see that a dark ski cap was folded in one pocket of his pants, and a brown leather-type jacket that appellant was wearing was buttoned to the top although it was a warm and humid night. The description of the suspect which the officers had been given mentioned both a brown leather jacket and a dark ski cap, as well as emphasizing that the suspect was said to be armed.

Officer Martin testified that he and his partner intended to interview the appellant to determine whether he was the suspect who had been described to them, and that, because the suspect was said to be armed, his partner patted the appellant down to insure the officers' safety.

The pat-down search produced a .38 caliber revolver and appellant was then arrested. The evidence complained of was found either upon appellant's person or in an inventory search of his car, which had been parked on the street and which was impounded subsequent to the arrest.

Walker testified that he had not been walking but was in his car when he was stopped, and that the pistol was in the glove compartment.

■ It was for the trial court, as the sole finder of facts in the suppression hearing, to determine whether Officer Martin's or Walker's version of the arrest was true. The trial court determined that the arrest was lawful.

■ Officer Martin was able to point to articulable facts which led him and his partner reasonably to suspect that Walker might be armed and dangerous. The pat-down search was within the pale of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d

889 (1968). Admission of the exhibits complained of was not error.

■ Appellant's final contention is that it was error to admit the in-court identification of appellant because the lineup procedure at which complainant and others identified appellant was unfair and tainted their in-court identification.

Five police detectives testified to the procedures used at the three lineups where appellant was identified. Their testimony was that, although the victims were allowed to mingle and talk before the procedure began, no talking was permitted once the subjects were on view. They further testified that each victim was interviewed separately about possible identification, that none of the victims were told that their assailant was probably in the lineup, and that the five persons on view in addition to appellant were all reasonably close to appellant in appearance. Appellant was allowed to choose his own place in each lineup. No error is shown.

■ Walker contends, citing *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), he had a right to the presence of an attorney at the lineups. No waiver of counsel was signed. But appellant had not been charged by information or indictment, nor arraigned, prior to the lineups. The contention is without merit.

The judgment is affirmed.