**Ralph SIQUEIROS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08-82-00272-CR.**

Court of Appeals of Texas, El Paso.

March 28, 1984.

Robert R. Harris, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

A jury found Ralph Siqueiros guilty of burglary of a habitation and assessed his punishment at ninety-nine years confinement. He asserts in this appeal that (1) the trial court erred in permitting an in-court identification that he contends was tainted by an improper "show-up" identification and that (2) evidence of an extraneous offense was improperly admitted at trial. We reverse and remand for a new trial.

■ Evidence was offered to establish that Appellant entered the complainant's bedroom through an outside window at about 3:00 a.m. on July 17, 1981, and raped her. About a month later, a police detective showed the fifteen-year-old complainant five photographs, and she identified the picture of the Appellant as being of the person who assaulted her. Several months later, just before Appellant was tried in another case involving somewhat similar facts, the complainant again identified Appellant's picture in the office of the prosecuting attorney. The prosecuting attorney then asked this complainant to be present as a witness during the week of April 5, 1982, when the Appellant was to be tried on the other charge pending against him.

While seated in the hallway outside a courtroom, the complainant saw the Appellant for the first time since the attack, and she immediately recognized him. Within about three weeks, Appellant was indicted for the offense which is now before this Court. Upon trial of the case, Appellant sought to suppress an in-court identification by the complainant. The objection was overruled, and this is the basis for the first ground of error. At the time the complainant saw the Appellant walk down the hallway in the courthouse, nothing was done to identify him as a defendant in a pending case or as a suspect in the attack upon the complainant. This incident resulting in identification was not the result of a "line-up" or "show-up." *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Garza v. State*, 633 S.W.2d 508 (Tex.Cr.App.1982). The identification was based upon an independent observation shown by the evidence to be sufficient to meet the necessary requirements for a proper identification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Garza v. State*, supra.

■ The witness was with her assailant for over thirty minutes. She had opportunity to view his face and gave an accurate description to the police. She never identified another person and was confident of her identification of Appellant when she saw his picture and when she saw him in person. An in-court identification based upon observations at the time of the offense and independent of any pretrial identification procedure is admissible at trial. *Thomas v. State*, 605 S.W.2d 290 (Tex.Cr. App.1980). Ground of Error No. One is overruled.

Appellant's next contention is that the trial court erred in admitting evidence of an extraneous offense which was offered to establish the identity of the defendant in this case. On direct examination, the complainant testified as follows:

Q. Can you describe to the jury what the intruder looked like?

A. He was around 5'7"; 150 pounds; Mexican; dark hair; dark eyes; and he had a mustache.

Q. Do you recall his clothing?

A. They were jeans and white checkered shirt, no socks.

Q. Do you think you would recognize him if you saw him again?

A. Yes, ma'am.

She then identified the Appellant who was seated in the courtroom. On cross-examination, she testified as follows:

Q. Now do you recall telling Officer Andrade, * * * that the subject who was in your room, and listen to what you told the officer, Mexican male, 26 to 27 years old, 5′6″ tall, 175 pounds, dark brown curly hair, brown eyes, face was dark complexioned, long sleeved white checkered shirt, blue jeans, do you recall giving that description?

A. Yes, sir.

Q. Where in that description did you tell the police officer that the man had a mustache?

A. When I was telling him, I said that he had his hand over his mouth as if hiding something, a mustache. He did not write that down.

    *    *    *    *    *    *

Q. And yet some 30 or 45 minutes, or however long it took the police to get there, you didn't tell them, "I am positive he had a mustache," did you?

A. I didn't tell them, but I knew he did.

Q. You knew that he did, but you didn't want to tell the police officer.

A. No, sir.

Q. Is there any reason why you don't want to tell the police officers?

A. I said it, the way it came across he wasn't sure I said he had a mustache. I did say it.

    *    *    *    *    *    *

Q. So the police officer is mistaken or misunderstood when he didn't include in this report that the man who was in there had a mustache, is that what you are saying?

A. Yes, sir.

When the officer was called as a witness and cross-examined about his report, he testified as follows:

Q. In there does it indicate she told you the man had a mustache?

A. I asked her.

Q. What did she say?

A. She said she could not see because the gentleman had his hand covering his mouth.

Q. Of course, if she had said the man had a mustache, you certainly would have put it in the report.

A. Yes.

After the Appellant, through cross-examination, had attacked the credibility of the complaining witness and her identification of Appellant as her attacker, the State offered the testimony of another fifteen-year-old girl who identified Appellant as the person who entered her bedroom during the early morning hours on August 11, 1981, and attempted to force her into a sexual act before she escaped.

An accused is entitled to be tried for the offense for which he stands charged and not for some collateral crime or for being a criminal generally. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972). But, there are exceptions to the rule. *Albrecht* notes six exceptions to the rule. Those include allowing extraneous offenses to circumstantially prove identity where the State lacks direct evidence on this issue and to refute a defensive theory raised by the accused. In discussing these exceptions, the court relied upon its holding in *Jones v. State,* 481 S.W.2d 900 (Tex.Cr.App.1972) and said that extraneous offenses are not admissible on the issue of identity where the State has uncontroverted direct evidence on that issue. In our case, the State had uncontroverted, direct evidence from the complainant. Judge Odom, in *Albrecht,* also said in limited instances extraneous offenses may become admissible where the effectiveness of the State's direct evidence, though uncontradicted by other evidence, is completely undermined by defense cross-examination. That is not our case. The complainant's identity was not weakened by cross-examination. She testified on cross-examination as follows:

Q. And during the week of April 5th, 1982, some nine months after this incident, you were called down to this courtroom to attend a hearing, were you not?

A. Yes, sir.

Q. And you saw this gentleman, Mr. Siqueiros, walk past the hallway and come into this courtroom, isn't that correct?

A. I didn't see him come into the courtroom.

Q. He approached the door as if he was going to come in the courtroom.

A. Yes, sir.

Q. And you then, nine months later, said, "I am positive that is the guy."

A. Yes, sir.

Q. And of course, you are coming into this courtroom today and saying you are 100% positive.

A. Yes, sir.

\* \* \* \* \* \*

Q. Now you are telling this jury, Miss Jennings, that the conditions in that room were well lit.

A. Not well lit, but you can see.

Q. Okay. It was light enough for you to be able to see Mr. Siqueiros, is that what you are telling this jury?

A. Yes, sir.

In analyzing this testimony, it is important to note that the court in *Albrecht* said that it is the answers and not the questions which are determinative on the issue of whether the State's evidence is undermined. Judge Odom noted the court's earlier decision in *Caldwell v. State*, 477 S.W.2d 877 (Tex.Cr.App.1972) holding that the exercise of the Constitutional right of cross-examination does not in and of itself open the door to the introduction of evidence of extraneous offenses. He concluded:

> This cross-examination did not go beyond the bounds of testing the witness' testimony. Throughout such examination, the witness never waivered in her identification of appellant. Therefore, the state would not be authorized to introduce a collateral crime on this ground. *Caldwell v. State*, supra.

In 1980, the court in *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.) upheld the admission of an extraneous offense in a rape case but never mentioned the leading case which it had decided only eight years earlier. In that case, the complainant was fourteen years old and she had the opportunity to see her attacker during daylight hours. Nevertheless, there was a question raised by cross-examination about the complainant's description of her attacker, and the defendant did raise an issue of alibi. The young girl in that case was apparently unable to identify the defendant at his examining trial. There was also a question raised about the complainant's identity of the color and length of the hair of her assailant and the clothes which he wore. In our case, there was never an inability to identify the defendant as the assailant. In the more recent case of *Dickey v. State*, 646 S.W.2d 232 (Tex.Cr.App.1983), the court cites *Albrecht*, but makes no mention of *Todd*. In this rape case, the court upheld the admission of evidence showing an extraneous offense after the defense of alibi was raised.

In our case, the defense of alibi was never raised. The defendant did not call any witnesses. The complainant was questioned at length about her ability to identify her assailant, but she remained steadfast in her testimony that she had adequate opportunity to see him and she remained steadfast in her testimony that Appellant was that person. If in this case the cross-examination of the State's witness about light in the room, a mustache on the assailant and the number of beers consumed by the complainant on the evening of the attack was such as to permit the introduction of the evidence of an extraneous offense, then the right of cross-examination was not a meaningful right to the defendant but a sword in his back.

We conclude that on the issue of identification the rule seems to be that if alibi is raised as a defense, extraneous offenses are admissible. *Dickey v. State*, supra; *Todd v. State*, supra. If the identifying witness has ever been unable to identify the defendant or has misidentified him, then extraneous offenses are admissible.

*Todd v. State,* supra. If the identifying witness wavers during cross-examination and the identity of the defendant is completely undermined, then extraneous offenses are admissible unless other witnesses remain unimpeached. *Redd v. State,* 522 S.W.2d 890 (Tex.Cr.App.1975). If the identifying witness is strenuously cross-examined but does not waver on the issue of identity, then the State's case has not been completely undermined, there remains direct evidence on the issue of identity, and extraneous offenses are inadmissible. *Albrecht v. State,* supra; *Walker v. State,* 588 S.W.2d 920 (Tex.Cr.App.1979). But, where there is some particular identifying characteristic which should be readily apparent and it is not observed by the identifying witness, extraneous offenses may be admissible. *Walker v. State,* supra (tattoos on each hand and a scar on the face); *Lusk v. State,* 511 S.W.2d 279 (Tex.Cr.App. 1974) (walking with a limp).

■■■ As to the question of identity resulting from a failure to note a mustache (in this case the identifying witness testified on direct examination that she did see a mustache), the prejudicial effect of the extraneous offense far outweighs its relevance where the identifying witness remains steadfast on the issue of identity. *Albrecht v. State,* supra. We sustain Ground of Error No. Two.

The judgment of the trial court is reversed and the case remanded for a new trial.

WARD, Justice, dissenting.

I respectfully dissent. The trial court announced that it was permitting the introduction of the extraneous offense under the authority of *Walker v. State,* 588 S.W.2d 920 (Tex.Cr.App.1979). In that case, six of the extraneous transactions were offered as tending to show the identity of the Appellant as the assailant, after it was established that the complainant was not impeached in any material detail in her testimony by cross-examination by Appellant's counsel. The court pointed out that the effect of the cross-ex-

amination was insufficient to raise the issue of identity, but that the manner of cross-examination by repeatedly referring to the scars on the Appellant's face and his tattoos permitted the introduction. The defensive implication was that the victim should have reported those scars and tattoos in her description which she had made to the officers.

Walker cited and relied on the case of *Lusk v. State,* 511 S.W.2d 279 (Tex.Cr.App. 1974). There, a defense witness testified that the defendant walked with a limp. The complainant testified that she saw no limp. The court there held that the testimony had raised the issue of identity. The court in *Walker* then stated that the demonstration by defense counsel in referring to the scars and tattoos was the functional equivalent of the witness' testimony in *Lusk,* therefore the issue of identity was raised sufficiently to allow the introduction of extraneous offenses relevant to that issue.

In the case before us, defense counsel, by his repeated questioning of the complaining witness, of the arresting officers and of the complainant in the extraneous transaction, emphasized that the Appellant at all times had a thick, dark, bushy mustache. He then questioned the complaining witness vigorously on her failure to include a mustache in her description of the assailant. He further elicited testimony from the officers that she had not mentioned the mustache in either a statement or in an attempted compilation of a composite drawing of the assailant. Again he brought out her failure to identify the Appellant's voice in a voice lineup. In addition, he presented evidence that none of the Appellant's fingerprints were found at the scene of the crime. Not only that, he elicited testimony regarding the amount of alcohol and marihuana consumed by the complainant on the night of the attack and repeatedly questioned the lighting in the bedroom. Clearly, the identity of the Appellant was the key defensive issue. This is reemphasized by the Appellant's first ground of error

attacking the in-court identification of the Appellant.

The Appellant himself opened up one extraneous offense when he told the complainant on the night of the assault that he had done the offense before, and the little girl's brother had come into the room and had stopped him.

There is no question that the extraneous transaction offered contained common distinguishing characteristics, and no attack is made by the Appellant on that ground. See: *Cobb v. State,* 503 S.W.2d 249 (Tex. Cr.App.1974). Here, the extraneous offense took place in the same part of town approximately the same time of night and about three weeks later. In the same manner, the Appellant raised an open bedroom window, entered the room without his shoes, awakened the fourteen-year-old victim with a threat not to scream as he had a knife, and that if she cooperated he would not hurt her or the other occupants of the house.

The majority refers to the case of *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980). Although alibi was the named defense, Justice Clinton summed up the court's ruling holding the extraneous offense admissible as follows:

> It is therefore clear that the only purpose for the lengthy and vigorous voir dire and cross examination of the State's identifying witnesses by appellant's attorney was to make a defensive issue of the identity of appellant and cast doubt upon his being the guilty man.
>
> We hold that this, coupled with the testimony of appellant's witnesses, rendered the strikingly similar extraneous rape committed within 15 days of the primary rape admissible to rebut the defensive issue of misidentification of appellant.

This is almost identical to the present case. The entire defense strategy was to undermine the complainant's identification of the Appellant by the repeated references to the failure of the report of the Appellant's black, bushy mustache.

This case should be affirmed.