**Ralph SIQUEIROS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 551–84.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 20, 1985.

Robert R. Harris, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Linda Jurewicz, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

This is an appeal from a conviction of burglary of a habitation under V.T.C.A., Penal Code Sec. 30.02(a)(1). A jury assessed punishment at 99 years imprisonment. On appeal the conviction was reversed by the El Paso Court of Appeals. *Siqueiros v. State*, 669 S.W.2d 394 (Tex. App.—El Paso, 1984).

The El Paso Court of Appeals reversed the conviction and remanded the case for a new trial because the trial court admitted into evidence an extraneous offense committed by the appellant. In reversing, the majority opinion of the court below held that because the prosecutrix' identification of appellant had not been completely undermined, and the appellant did not raise an alibi defense, the trial court improperly admitted the extraneous offense during the State's case in chief. We granted the State's petition for discretionary review to examine the correctness of that decision.

At trial, J\_\_\_\_\_ J\_\_\_\_\_, the 15 year-old victim, testified against the adult appellant. She was the State's only identifying witness. She stated that on July 16, 1981 she went to sleep in her room at her home just before midnight. She was awakened by a man in her room. After threatening the prosecutrix' life, the appellant forced her to have sexual intercourse with him. The appellant then left through the prosecutrix' bedroom window. At trial the prosecutrix identified appellant as the man who entered her home without her permission and forced her to have sex with him.

On cross-examination of the prosecutrix, trial counsel showed that conditions that evening were not conducive to her accurately seeing her assailant. She admitted that the lighting was bad, that she could not see the dial on her digital clock beside her bed, and that she had drunk 3 beers and smoked marihuana before going to bed that night. She admitted that when Officer Andrade arrived at the scene, she told him that her assailant had dark brown, curly hair and did not tell him that her assailant had a mustache. She admitted that on July 27, 1981, when she put together a composite drawing of her assailant, she told Detective Beltran that she had difficulty recalling her assailant's face and that the assailant had dark brown, curly hair. She admitted that the composite drawing produced in that meeting did not resemble the appellant. Trial counsel then drew attention to the fact that appellant had a mustache. She also admitted on cross-examination that on August 17, 1981, when she picked appellant's photo from a line-up, she told the officers that she "can-

not be positive" of her identification of appellant. She admitted that, when giving a sworn statement to the police, she failed to mention that appellant had a mustache. Trial counsel again drew attention to the appellant's mustache. On August 20, 1981, she went to a voice line-up. She stated that she told Officer Andrade earlier that her assailant's voice was familiar. She admitted that she could not identify any of the voices as being the appellant's.

Trial counsel continued to impeach the prosecutrix' identification of appellant through his cross-examination of the State's other witnesses. When Detective Beltran was cross-examined, he admitted that on July 27, 1981 the prosecutrix told him that the assailant had *wavy hair* and did not tell him that the assailant had a mustache. Beltran also stated that on August 17, 1981, the prosecutrix told him that she could not be positive of her identification of appellant in the photo line-up. Beltran admitted that in his report he wrote that the prosecutrix had *tentatively* identified appellant. Trial counsel had him repeat this statement on recross-examination. Beltran also explained that the prosecutrix did not have him include in her statement that the assailant had a mustache. Beltran went on to state that the prosecutrix failed to pick the appellant's voice from a voice line-up on August 20.

When Officer Andrade was cross-examined, he stated that he was at the scene shortly after the attack on July 17. He admitted that the prosecutrix failed to mention to him that the rapist had a mustache. Again, trial counsel drew attention to the appellant's mustache. Andrade told trial counsel that the prosecutrix told him that the assailant had dark brown, curly hair.

Lastly, when trial counsel cross-examined Dr. Philip Becker, who performed an examination on the prosecutrix shortly after the attack, Dr. Becker explained that the prosecutrix told him she had 5 or 6 beers to drink on the night of the attack.

The State was then permitted by the trial court to admit into evidence an extraneous offense. K____ H____, a 15 year-old

female, testified that on August 10, 1981, a man came into her room while she was asleep and attempted to force her to have sexual intercourse with him. At trial, K____ H____ identified the appellant as the man who did this to her. The trial court admitted her testimony after ruling that identity had been made an issue by the defense, and that a significant relationship existed between the extraneous offense and the offense appellant was charged with.

The testimony of both girls, K____ H____ and J____ J____, revealed that they were both 15 year-old females who attended Eastwood High and lived in the same neighborhood. The two offenses occurred 26 days apart and both took place about 3:00 a.m. The victims were sleeping alone in their bedrooms when their assailant entered through a bedroom window. The assailant put his hand over both girls' mouths and threatened their lives if they resisted. The assailant told both girls he had a knife. Both victims identified appellant as their assailant.

After K____ H____ testified the State called Art Orozco, a latent fingerprint examiner, to the stand, to prove that the appellant's fingerprints were found in her house. While being cross-examined, Orozco testified that he had lifted six latent fingerprints from the window to J____ J____'s bedroom. This was the window which prosecutrix said the appellant left through. Orozco testified that none of the six latent prints could be identified as belonging to the appellant.

When the State rested its case, trial counsel moved for an instructed verdict because "there has been some serious question as to the identification of the accused as the person who committed this offense, and the proof has not shown beyond a reasonable doubt that he was involved." Obviously defense counsel was asking the court for a finding of not guilty because of the lack of identification of the appellant.

■ Before an extraneous offense may be admitted against a defendant, it must be shown that there is a relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App. 1972). This relationship should consist of some distinguishing characteristic common to both the extraneous offense and the offense charged. *Cobb v. State*, 503 S.W.2d 249 (Tex.Cr.App.1973); *Blackmon v. State*, 644 S.W.2d 12 (Tex.App.Dallas, 1982).

■ If this test is met, and the identity of the defendant is in issue, an extraneous offense is admissible to prove identity. *Cobb*, supra. Cross-examination of the State's identifying witnesses can raise the issue of identity. *Simmons v. State*, 457 S.W.2d 570 (Tex.Cr.App.1970); *Blackmon*, supra. When the State's only identifying witness is impeached on cross-examination, raising the issue of identity, the extraneous offense becomes admissible. *Ferrell v. State*, 429 S.W.2d 901 (Tex.Cr.App.1968). The identification of a defendant can be impeached by cross-examination of the witness about a material detail of the identification, *Redd v. State*, 522 S.W.2d 890 (Tex. Cr.App.1975); *Lusk v. State*, 511 S.W.2d 279 (Tex.Cr.App.1974); *Jones v. State*, 587 S.W.2d 115 (Tex.Cr.App.1978); about the conditions surrounding the offense charged and the witness' identification of the defendant in that situation, *Olivio v. State*, 422 S.W.2d 182 (Tex.Cr.App.1967); *Owens v. State*, 450 S.W.2d 324 (Tex.Cr.App.1969); or about an earlier misidentification of the defendant. *Gillon v. State*, 492 S.W.2d 948 (Tex.Cr.App.1973). The extraneous offense becomes admissible even where the State's direct evidence is uncontradicted by other evidence, but is undermined only on cross-examination. *Albrecht*, supra.

■ An extraneous offense may be admissible where the State's identifying witness is not impeached on cross-examination alone, but impeached by the defense counsel's actions during cross-examination. In these instances, the actions of the defense counsel amount to the equivalent of testimony in support of the defendant. In *Walker v. State*, 588 S.W.2d 920 (Tex.Cr. App.1979), the defense attorney asked the identifying witness if she noticed any tatoos and scars on her assailant. When she responded negatively, defense counsel had his client stand up and display his scars and tatoos for the witness and jury. The extraneous offenses were admitted.

■ Lastly, where an extraneous offense may have been improperly admitted in the State's case-in-chief, subsequently admitted evidence can render the error harmless. If the trial court improperly admits an extraneous offense, but the defense then raises the issue of intent, *Rubio v. State*, 607 S.W.2d 498 (Tex.Cr.App.1980); the defense of duress, *Thrush v. State*, 515 S.W.2d 122 (Tex.Cr.App.1974); or the issue of identity, *Jones*, supra; the extraneous offense becomes admissible and the earlier error becomes harmless.

■ We believe the majority opinion of the court below places too great a restriction on the State's ability to use extraneous offenses when identity has been placed in issue. The facts of the instant case reveal a defense strategy aimed at undermining the prosecutrix' identification. This strategy raised the issue of identity. We agree with the dissenting opinion of the court below that this made the extraneous offense admissible.

In the instant case the cross-examination of the prosecutrix, Detective Beltran, Officer Andrade, Art Orozco and Dr. Becker sufficiently raised the issue of identity to permit the admission of the extraneous offense. The prosecutrix was the State's only identifying witness. Appellant impeached a material detail of her identification, specifically, the mustache. This was bolstered by the cross-examination of Beltran and Andrade. Appellant impeached the prosecutrix' identification of him through cross-examination on the conditions surrounding the offense charged: the prosecutrix' room was dark and not well lit, the prosecutrix could not see the dial on

her digital clock, and the prosecutrix had been drinking alcohol and consuming drugs. This was bolstered by the cross-examination of Dr. Becker. Lastly, appellant cross-examined the prosecutrix on the matter of her earlier inability to identify the appellant at the voice line-up. The cross-examination of Detective Beltran bolstered this impeachment. In this case these methods of impeachment sufficiently raised the issue of identity. The majority opinion of the court below held that they were not enough to raise the issue. That decision implies that an identifying witness can only raise the issue of identity if she completely recants her identification under cross-examination.

Appellant's trial counsel engaged in activity that amounted to an equivalent of testimony impeaching her identification of appellant. While cross-examining the prosecutrix as to her inability to recall that the appellant had a mustache prior to the trial, trial counsel kept drawing attention to the fact that appellant had a prominent mustache. The only distinction between this case and *Walker*, supra, is that appellant did not have to stand up and bare his arms to show his mustache. The majority opinion of the court below mistakenly relies on *Walker*, supra, to support its decision. As in *Walker*, supra, the actions of trial counsel here justified the admission of the extraneous offense.

▆ After the extraneous offense was admitted by the trial court, defense counsel cross-examined Art Orozco. This revealed that of the six latent fingerprints recovered from the window to prosecutrix' bedroom, none came from the appellant and three came from someone besides the prosecutrix, her family and the appellant. If the earlier admission of the extraneous offense was harmful error, the subsequent evidence raised the issue of identity and cured the error. *Rubio*, supra; *Thrush*, supra; *Jones*, supra.

As the minority opinion of the court below explained, the case of *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.1980), as written by Judge Clinton, is almost identical to the instant case. In that case, this Court ruled that the extraneous offense was admissible because the issue of identity was raised. The majority opinion of the court below implied that a defendant must put on a defense in order to justify the admission of an extraneous offense. They mistakenly relied on *Todd v. State*, supra, to support this. In the instant case, as in *Todd v. State*, "the only purpose for the lengthy and vigorous voir dire and cross-examination of the State's identifying witnesses ... was to make a defensive issue of the identity of appellant." *Todd*, supra, at 291. This, without a case being put on by the appellant, justified the admission of the extraneous offense.

"Any doubt left regarding the defensive trial strategy ... is assuaged by a review of defense counsel's final argument on the issue of guilt." *Todd*, supra. The same is true of the instant case. Defense counsel wisely explained that trials are not like the Perry Mason Show, where the question of identity is clearly answered when a witness breaks down on the stand and admits that he or she is lying. Counsel stated that witnesses do not completely change their testimony on the stand. Counsel then extensively argued the prosecutrix' questionable identification of appellant. For the last time, he drew attention to his client's mustache. "It is obvious that the most distinguishing characteristic about him is his mustache." The defense strategy made identity an issue, and could have provided the jury with reasonable doubt as to the guilt of appellant.

The trial court did not err in allowing the admission of the extraneous offense in the State's case-in-chief. Accordingly, the judgment of the Court of Appeals is reversed. Since appellant's other ground of error was considered and overruled by the Court of Appeals, the judgment of the trial court is affirmed.

TEAGUE, J., dissents.