Charles Howard **FRENCH**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–84–00108–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 30, 1985.

was waived and abandoned by the State and the jury's verdict is based upon the submitted count. The sufficiency of the evidence is challenged, thus necessitating a recitation of the facts presented.

On June 3, 1983, Patty Booth, a waitress at the Jim's Coffee shop at Walzem Road and Loop 410 in San Antonio, left the coffee shop at about 7:00 o'clock p.m. and discovered that her black 1974 Datsun 260Z automobile was missing. Booth returned to the restaurant and reported the theft to a City of Windcrest police officer who happened to be there. A report was also made that evening to the San Antonio Police Department.

Booth also telephoned her boyfriend, John Glass, to inform him of the theft. The next evening Glass and two friends, Scott Slaughter and Jeff Kothmann, were traveling south on Perrin-Beitel Road in Glass' vehicle.

Glass had informed Slaughter that Booth's car had been stolen. Slaughter was familiar with Booth's car having at one time been interested in purchasing the car from his neighbor from whom Booth bought it.

At approximately 7:00 o'clock p.m. as they approached a turn-around lane under Loop 410, Slaughter, sitting in the passenger side of the vehicle, recognized Booth's car traveling north on Perrin-Beitel. Slaughter observed an individual with long red hair, a full beard and mustache driving Booth's car.

Upon being alerted by Slaughter, Glass cut through a vacant lot, drove over a curb and made a U-turn in an effort to pursue Booth's car traveling north on Perrin-Beitel.

The pursuit led Glass down Perrin-Beitel to the intersection of Naco-Perrin Road where the Booth car stopped in the parking lot of an apartment complex. Glass drove past the parked vehicle, turned and passed the parked car once again.

Slaughter claimed at trial that he was able to clearly view the individual sitting

Edward M. Lavin, San Antonio, for appellant.

Sam Millsap, Jr., Charles Tennison, Mark Bindock, Daniel Thornberry, Criminal Dist. Attys., San Antonio, for appellee.

**OPINION**

Before CANTU, TIJERINA and DIAL, JJ.

CANTU, Justice.

The conviction is for unauthorized use of a motor vehicle. Punishment was assessed by the jury at fifteen years' confinement in the Texas Department of Corrections and a $10,000.00 fine.

The indictment, in separate counts, alleged theft of an automobile and unauthorized use of a motor vehicle as well as an enhancement paragraph. The theft count

behind the steering wheel of Booth's car. He identified that individual as appellant.

Glass also recognized the Booth car but was not able to obtain a clear view of the driver. Both Glass and Slaughter observed a passenger in the Booth car but could not specifically describe the individual.

After passing the parked car a second time, Glass drove to a nearby Stop-N-Go convenience store to call police. Following a phone call to police, Glass and one of his companions left in pursuit of the Booth car, which had since left the parking lot. The other companion remained at the Stop-N-Go to await police.

Glass' pursuit of the Booth car was unfruitful inasmuch as the Booth vehicle disappeared from Glass' view.

Later that evening Glass notified Booth about what had transpired. Booth in turn notified the Windcrest Police of the incident and gave a description of the suspect as a white male with long red hair, a full beard and mustache.

Thereafter, on June 9th at about 1:30 o'clock a.m., Booth received a phone call from a close friend, Joyce Rifenbury. Rifenbury told Booth that she had spotted Booth's car parked outside of a game room known as the Galaxy Billiards located not too distant from the Jim's Coffee Shop where Booth was employed.

Booth drove a rental car to Galaxy Billiards where she met Rifenbury and Fred Wilson, Rifenbury's boyfriend.

Booth, using a spare set of keys, drove her Datsun 260Z back to Jim's Coffee Shop and called the Windcrest police from there. San Antonio police had already been contacted from Galaxy Billiards.

Rifenbury and Wilson then drove Booth back to Galaxy Billiards. There, with a description of the suspect seen by Slaughter, Wilson entered Galaxy Billiards and approached some of the patrons asking "if anyone owned a Datsun, a black 260." Appellant responded, "I think it's mine." Un-

der a pretext that Wilson had collided with the Datsun auto causing damage, appellant accompanied Wilson out to the parking lot where the Booth vehicle had originally been parked prior to being moved by Booth.

Appellant emerged from the club and onto the parking lot. He hesitated then stated, "It's not mine, mine's on the other side" and attempted to walk away but was stopped and apprehended by police officers arriving on the scene.

Wilson testified that no other Datsun had been on the parking lot other than the vehicle being driven by Rifenbury and the Booth car which had been removed by Booth.

Appellant was placed in one of the police cars and was driven back to the Jim's Coffee Shop on Walzem Road.[1] At the Jim's Coffee Shop parking lot Slaughter identified appellant as the individual he had seen driving Booth's car on June 4th.

Appellant's grounds of error numbers one, two and three all complain of the trial court's action in permitting the jury to hear evidence of appellant's identification while at the Jim's Coffee Shop. Appellant's sixth ground of error challenges the sufficiency of the evidence to support the conviction. Argument is made that the identification of appellant by Slaughter was through procedures which were patently and unduly suggestive because it was made at a time when appellant was clearly under arrest, handcuffed and confined to a police car. It is argued that such identification procedures created a substantial likelihood of irreparable misidentification. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In support of his position, appellant points to numerous instances of conflicting testimony of the various witnesses, some of which supports his position that an arrest was effectuated by San Antonio police officers at the Galaxy Billiards, a location

---

1. There is conflicting testimony as to whether appellant was handcuffed before being driven back to the Jim's Coffee Shop or whether he agreed to voluntarily accompany the officers there.

within the City of San Antonio. There is, however, much testimony that appellant was not arrested by Windcrest police until he was identified at the Jim's Coffee Shop parking lot after voluntarily accompanying San Antonio police to a location within the corporate limits of the City of Windcrest. Such conflict in testimony is to be resolved by the trier of fact as in any other case depending on credibility of witnesses. It was within the province of the trial court to determine the admissibility of such testimony and within the jury's province to accept or reject. *Walker v. State*, 588 S.W.2d 920 (Tex.Crim.App.1979). There is ample evidence to support the version adopted by the jury.

■ Individual identification or show-up procedures are frowned upon, but their results are not *per se* inadmissible. *Neil v. Biggers, supra; Cole v. State*, 474 S.W.2d 696 (Tex.Crim.App.1971). This court must, as a reviewing court, determine whether, although suggestive, the pretrial identification was, under the totality of circumstances, reliable, or if there is a substantial likelihood of misidentification. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers, supra.*

The United States Supreme Court in *Neil v. Biggers*, set out the factors to be considered in evaluating reliability as:

   (1) the opportunity of the witness to view the criminal at the time of the crime;

   (2) the witness' degree of attention;

   (3) the accuracy of the witness' prior description of the criminal;

   (4) the level of certainty demonstrated by the witness at the confrontation; and

   (5) the length of time between the crime and the confrontation.

409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

■ Slaughter's testimony indicates that he had three opportunities under relatively good lighting conditions to view appellant on the date of the offense. Slaughter's attention was, admittedly, focused on ap-

pellant as the driver of Booth's car and not on the passenger. Moreover, there has never been a challenge to the accuracy of Slaughter's description of appellant. Nor has the certainty of the identification ever been impugned. *Cf. Jackson v. State*, 657 S.W.2d 123 (Tex.Crim.App.1983).

The time span under consideration is less than a week, a little over four days to be exact. We find that the factors supporting reliability of Slaughter's identification weigh heavily against a finding of suggestiveness in the pretrial procedures employed.

■ But even if we could agree that the procedures employed were unnecessarily suggestive, we are not inclined to hold that under the totality of the circumstances there existed a substantial likelihood of misidentification. A suggestive identification procedure does not, in itself, intrude upon a constitutionally protected interest. *Manson v. Brathwaite, supra.*

Under the record before us we agree with the trial court that the admissibility of Slaughter's in-court testimony is supported by his prior observations of appellant and that these observations were sufficient to serve as an independent origin. *Jackson v. State, supra.*

We overrule appellant's grounds of error numbers one, two and three.

■ Moreover, when we evaluate the entire record in the light most favorable to the jury verdict we cannot say that the jury as a rational trier of fact could not have found appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We overrule appellant's sufficiency challenge.

By his fourth and fifth grounds of error appellant alleges that the trial court erred in refusing to allow him to introduce portions of a tape recording of his parole revocation hearing and that this refusal denied him his constitutional rights to meaningful confrontation and cross-examination of witnesses.

Appellant sought to impeach Slaughter's trial testimony bearing on his identification

and observations of appellant through tape recorded statements Slaughter allegedly made at a parole revocation hearing. Also sought to be impeached was Booth's testimony.

A motion in limine had earlier been filed by appellant seeking to exclude certain evidence regarding prior convictions and acts of misconduct developed at that hearing. The motion for limine was overruled by the trial court. Appellant was not prevented by the trial court's ruling from utilizing any of the tape recorded testimony.[2] Furthermore, no attempt was made by appellant to offer any portion of the tape recording into evidence during trial. Nor did the State mention anything about the parole revocation hearing. Thereafter appellant filed a transcription of the tape recordings as a bill of exception.

 We point out that the function of a motion in limine is to seek exclusion of objectionable evidence. *Norman v. State,* 523 S.W.2d 669 (Tex.Crim.App.1975), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 259 (1975). Appellant correctly utilized the motion in limine for the purpose of seeking exclusion of prosecution evidence. He now complains of the exclusion of defense testimony. Neither the motion nor the trial court's order thereon addressed exclusion of defense evidence. Through conscious choice appellant elected not to offer the very evidence he now claims was excluded. Thus appellant is in no position to complain of trial court action never taken. The fact that appellant now anticipates that the trial court would have rendered an adverse ruling does not present a viable controversy for appellate review.

Appellant recognizes that an attempted use by him of the testimony contained in the bill of exceptions would have exposed him to "grossly prejudicial, inflammatory and entirely irrelevant matters."

Had he tendered the evidence he now claims was excluded, a reurging of his motion in limine would have provided a reconsideration by the trial court of its ruling on the subject matter of the motion. *Norman v. State, supra.*

The absence of an offer of the alleged excluded evidence and an adverse ruling by the trial court presents nothing for review. Appellant's fourth and fifth grounds of error are overruled. The judgment of the trial court is affirmed.

---

**2.** The trial court was never required to decide the admissibility of the tape recordings under the criteria laid out in *Edwards v. State,* 551 S.W.2d 731 (Tex.Crim.App.1977).