COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-441-CR
 
ANDY JAMES ORTIZ           
           
           
           
           
        APPELLANT
V.
THE STATE OF TEXAS           
           
           
           
           
           
STATE
------------
FROM THE 396
TH DISTRICT COURT OF
TARRANT COUNTY
------------
MEMORANDUM OPINION
(1)
------------
Appellant Andy James Ortiz was convicted
of capital murder and sentenced to life imprisonment in the Institutional
Division of the Texas Department of Criminal Justice. In one point on appeal,
Appellant complains that the trial court abused its discretion by admitting
evidence of an extraneous capital murder during the State's case-in-chief. At
trial, Appellant raised several arguments against the admission of the
extraneous offense. But on appeal, Appellant appears to limit his arguments to
the following:

 (1) the trial court abused its
 discretion by admitting the evidence because under rule of evidence 404(b),
 identity was not an issue; and


 (2) the trial court abused its
 discretion by admitting the evidence because under rule of evidence 403, the
 probative value of the evidence was substantially outweighed by the risk of
 unfair prejudice.

Because we hold that identity was an issue
in this case and that the probative value of the extraneous offense evidence was
not substantially outweighed by the risk of unfair prejudice, we affirm the
trial court's judgment.
I. Factual Background
The evidence showed that on a Sunday
night, the complainant's brother discovered her body face-up, covered with
sheets, in their parents' bedroom. Her bra was pushed up and her panties were
pushed down to reveal her breasts and genitalia. She had been strangled with
shoelaces taken from her brother's tennis shoes and had suffered two blows to
the head and vaginal tearing. The investigating officer obtained samples of
Appellant's blood, saliva, and hair. There was no evidence that any semen was
discovered on the body or at the crime scene, but Appellant's DNA was found
under the complainant's fingernails.
The State offered extraneous offense
testimony on the issue of identity. The prosecutor stated that Appellant had
raised a defensive theory on cross-examination that would provide an explanation
other than aggravated sexual assault and murder for the presence of his DNA at
the scene--specifically, that Appellant and the complainant had a prior
relationship. Appellant argued at trial that the State had opened the door
regarding evidence of a prior relationship and that he had done nothing to
diminish the State's case on the identity issue. The extraneous offense was
admitted for the limited purpose for which it was offered over Appellant's
objection.
Evidence showed that the complainant in
the extraneous offense, an adult female, had shared an apartment with a roommate
near DFW Airport. After a weekend trip to Austin, her roommate discovered the
complainant's body in the living area of the apartment. The body was covered
with sheets, clothed, and face-down. The complainant had been bound with the
cord from an electric iron in the home; the iron was still attached. She had
been strangled with a brown leather belt. She had also received a blow to the
head. Semen later identified as Appellant's was found in her mouth. The home had
been ransacked, some items were missing from the home, and the complainant's
abandoned car, on which Appellant's fingerprints were located, had been found a
few miles away.
The limiting instruction in the jury
charge stated that the jury could only consider the extraneous offense evidence
"in determining the identity of the Defendant in connection with the
offense, if any, alleged against him in the indictment in this case, and for no
other purpose." The judge similarly instructed the jury during the
presentation of the extraneous offense evidence.
II. Identity and Rule
404(b)
Appellant first argues that "identity
was never brought into issue" and that "this record reflects an
absence of impeachment of any identifying witness." We disagree. Under rule
404(b), evidence of an extraneous offense may be admitted to prove identity.(2)
But an extraneous offense may be admitted to show identity only if identity is
an issue in the case.(3) The defense may raise
the issue during cross-examination of the State's witnesses.(4)
The fifteen-year-old complainant's mother
was the State's first witness. On cross-examination, she testified that she had
found a letter from Appellant in her daughter's room some time after her death.
That letter established that Appellant and the complainant had some type of
relationship. The complainant's brother testified next for the State. On direct
examination, he was asked if he had ever met Appellant before the murder. He
responded that Appellant had stopped by the family's house one time but had not
gotten out of his vehicle. On cross-examination by the defense, the witness
stated that the incident had occurred months before and that Appellant had asked
for the complainant. He also stated that the complainant had mentioned
Appellant's name in passing.
A neighborhood girl testified on direct
examination by the State that she had seen Appellant jogging from the
complainant's family's backyard on the evening of the offense. The complainant's
cousin then testified on direct examination by the State that he had seen
Appellant with the complainant on her family's front porch that same evening. On
cross-examination by the defense, the cousin testified that the complainant had
not seemed scared of Appellant. Appellant highlighted the conflicts in these two
eyewitnesses' testimony concerning the clothing Appellant was allegedly wearing
and the time that he was allegedly spotted at the scene. The forensic DNA
analyst then testified on direct examination that Appellant's DNA was found
under the complainant's fingernails. After that witness, the State introduced
the extraneous offense evidence.
Based on the testimony elicited by the
defense, we hold that identity was an issue under rule 404(b). Other than
contending that identity was not an issue at trial, Appellant has raised no
arguments on appeal relating to the admissibility of the extraneous offense to
prove identity under rule 404(b).(5) We are
therefore constrained to hold that the trial court did not abuse its discretion
by admitting the extraneous offense under this rule.
III. Rule 403 Balancing
Test
Appellant next complains that the
extraneous offense evidence was inadmissible under rule 403. Rule 403 provides
that relevant evidence "may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice."(6)
The rule favors admissibility over exclusion.(7)
Factors that trial courts should consider in the balancing test include:

        
 (1) how compellingly the extraneous offense evidence serves to make a fact of
 consequence more or less probable--a factor which is related to the strength
 of the evidence presented by the proponent to show the defendant in fact
 committed the extraneous offense;
        
 (2) the potential the other offense evidence has to impress the jury "in
 some irrational but nevertheless indelible way";
        
 (3) the time the proponent will need to develop the evidence, during which the
 jury will be distracted from consideration of the indicted offense;
        
 (4) the force of the proponent's need for this evidence to prove a fact of
 consequence, i.e., does the proponent have other probative evidence available
 to him to help establish this fact, and is this fact related to an issue in
 dispute.(8)

 
Compelling Evidence
In assessing this factor, it is the
"inherent probativeness" of the extraneous offense evidence that is
the focus of our inquiry.(9) This "inherent
probativeness" is "often, although by no means invariably, a function
of the similarity of the extraneous transaction to the charged offense" and
"is also a function of the strength of the proponent's evidence to show the
opponent in fact committed the extraneous conduct."(10)
The offenses were similar--both the complainant in the charged offense and the
complainant in the extraneous offense had been beaten, sexually assaulted, and
strangled. The probative value of the extraneous offense evidence was lessened
by the following differences:

 there was no evidence of a relationship
 in the extraneous offense;
 the complainant in the charged offense
 was a minor teenager; the complainant in the extraneous offense was an
 adult;
 there was no evidence of oral sex in
 the charged offense or vaginal intercourse in the extraneous offense;
 there was no evidence of semen in the
 charged offense;
 the complainant in the charged offense
 was not bound;
 the bodies were found in different
 positions;
 the charged offense involved no theft
 or ransacking; and
 the extraneous offense occurred near
 the airport; the charged offense occurred in the neighborhood shared by
 Appellant and the complainant.

Nevertheless, the presence of Appellant's
DNA in the mouth of the dead complainant who had been knocked in the head,
bound, and strangled was strong evidence that Appellant had committed the
extraneous offense. Overall, this factor weighs in favor of admitting the
extraneous offense.
Irrational Impression
on Jury
As the Montgomery court provided,
"[S]exually related misconduct . . . [is] inherently inflammatory." (11)
However, both the charged offense and the extraneous offense in the case before
us involve a aggravated sexual assault-murder combination of capital murder.
When the extraneous offense is "no more heinous" than the charged
offense, it is "not likely to create such prejudice in the minds of the
jury that it would have been unable to limit its consideration of the evidence
to its proper purpose."(12) Further, in the
case before us, the trial court instructed the jury three times to consider the
extraneous offense evidence only to determine the identity of Appellant in
connection with the charged offense. Based on these facts, this factor weighs in
favor of admitting the extraneous offense evidence.
Time
As Appellant points out, the record
reflects that nine witnesses over three volumes testified about the extraneous
offense. The State "agrees that the presentation of the extraneous offense
was time consuming." Our review of the record shows that based on the
number of pages devoted to each offense, only slightly more than thirty percent
of the testimony in the case concerned the extraneous offense. The testimony on
the extraneous offense was presented in an afternoon, part of the next morning,
and, briefly interspersed with testimony about the charged offense, on the final
morning of trial. At most, the presentation of the evidence of the extraneous
offense took one day. We conclude that this factor weighs in favor of admitting
the extraneous offense testimony.
State's Need for the
Evidence
Appellant argues in his brief that the
State's other evidence made the introduction of the extraneous offense
unnecessary. "When the proponent has other compelling or undisputed
evidence to establish the proposition or fact that the extraneous misconduct
goes to prove, the misconduct evidence will weigh far less than it otherwise
might in the probative-versus-prejudicial balance."(13)
But we see no other "compelling or undisputed evidence" tending to
prove that Appellant was the perpetrator of an aggravated sexual assault and
murder on the complainant in the charged offense.
While two witnesses had placed Appellant
at the scene of the crime, their testimony conflicted, and these conflicts were
highlighted by Appellant. Additionally, Appellant developed evidence of a
relationship to suggest an innocent reason for the presence of Appellant at the
crime scene and the presence of his DNA under the complainant's fingernails.
After the jury heard the evidence of the
extraneous offense, the State called an acquaintance of Appellant's who
testified that in August 1997, he had overheard a conversation between Appellant
and David Cotto. He testified that he had heard "that Andy had committed a
rape," "[t]hat he had hit a young girl and taken her inside . . . the
house," "that he was having sexual intercourse with her," and
"that he heard a noise and he left running." The witness had reported
the conversation to the detective investigating the charged offense. Appellant
challenged the witness's credibility by eliciting testimony that in his initial
meeting with the detective, he had denied knowing anything about the offense and
that the State had dismissed an aggravated assault with a deadly weapon charge
against him in exchange for the testimony.
Given Appellant's vigorous
cross-examinations of the three witnesses, the State needed the extraneous
offense to tie Appellant to both the aggravated sexual assault and murder
portions of the capital murder charge.(14) We
therefore conclude that this factor weighs in favor of admission of the
extraneous offense evidence.
Because all the factors weigh in favor of
the admission of the extraneous offense evidence, we hold that its probative
value was not "substantially outweighed by the danger of unfair
prejudice."(15) The trial court therefore
did not abuse its discretion in admitting the evidence under rule 403. We
overrule Appellant's sole point.
IV. Conclusion
Having overruled Appellant's sole point,
we affirm the judgment of the trial court.

                                                                               
PER CURIAM
PANEL F: DAUPHINOT, GARDNER, and WALKER,
JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
[Delivered March 13, 2003]

1. See Tex. R. App. P. 47.4.
2. Tex. R. Evid. 404(b).
3. Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim.
App. 1996).
4. Siqueiros v. State, 685 S.W.2d 68, 71 (Tex.
Crim. App. 1985).
5. See, e.g., Booker v. State, No.
2-00-408-CR, slip op. at 19 n.1, 2003 WL 151980, at *9 n.1 (Tex. App.--Fort
Worth Jan. 23, 2003, no pet. h.) (op. on reh'g) (issue of whether similarities
between the charged offense and the extraneous offense amounted to
"signature" regarding identity was analyzed by court when considering
relevance of the evidence under rule 404(b)).
6. Tex. R. Evid. 403.
7. Montgomery v. State, 810 S.W.2d 372, 389 (Tex.
Crim. App. 1991) (op. on reh'g).
8. Santellan v. State, 939 S.W.2d 155, 169 (Tex.
Crim. App. 1997) (footnote omitted) (quoting Montgomery, 810 S.W.2d at
389-90).
9. Montgomery, 810 S.W.2d at 389-90.
10. Id.
11. Id. at 397.
12. Taylor v. State, 920 S.W.2d 319, 323 (Tex.
Crim. App.), cert. denied, 519 U.S. 951 (1996).
13. Montgomery, 810 S.W.2d at 390.
14. See Tex. Penal Code Ann. § 19.03(a)(2)
(Vernon 2003).
15. Tex. R. Evid. 403.