NUMBERS 13-00-035-CR
& 13-00-042-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                      CORPUS CHRISTI B
EDINBURG



 

 

CHARLIE MELVIN PAGE,                                                       Appellant,

 

                                                   v.

 

THE
STATE OF TEXAS,                                                          Appellee.

 

 



                        On appeal from the 122nd
District Court 

                                of Galveston
County, Texas.

 

 



                                   O P I N I
O N

 

 Before Chief Justice Valdez and Justices
Rodriguez and Baird[1]

                                          Opinion
by Justice Baird

 








Appellant was charged
in separate indictments with the offenses of sexual assault and impersonating a
peace officer.  The cases were combined
into a single trial where a jury convicted appellant of both offenses and
assessed punishment at seven years and five years confinement in the Texas
Department of Criminal Justice, Institutional Division, respectively.  We reverse.

I.  Factual Summary.

Appellant=s sole point of error
contends the trial judge erred in admitting extraneous offense evidence.  To fully address this issue we set forth the
evidence with considerable detail in the order presented at trial.

A.  The State=s Case In Chief.

i.  Testimony Related to the Charged Offenses.

In 1997, the
complainant was working as a prostitute in Galveston.  One winter night, as she walked to a Jack in
the Box restaurant, a maroon four-door car pulled up.  The complainant testified the driver was Aa white man, had blond
hair parted on the side, and he had a baby face and wasn=t muscular.  He was kind of chunky.@  The complainant made an in-court
identification of appellant as the driver.








Appellant beckoned the
complainant, and when she approached, appellant flashed a badge, said he was a
police officer and instructed the complainant to get into the vehicle.  The complainant complied, appellant placed
the badge above the sun visor, and the two drove away.  She believed appellant was a plain clothes
detective because he was not in uniform. 
Appellant stopped the vehicle, got a police radio from the trunk, and
placed it in the back seat.  Appellant
returned to the vehicle, and began driving again; the complainant heard voices
from a police radio.  Appellant said it
was almost time for shift change, and he did not want to take the complainant
to jail because of the paperwork.  The
clock on the dashboard showed 7:50 p.m.

Appellant stopped a
second time and told the complainant she would have to perform oral sex on
appellant or go to jail.  Appellant
pulled the complainant=s head to his exposed
penis.  The complainant performed oral
sex on appellant for approximately thirty seconds, stopped, said she would not
continue, and appellant could take her to jail if he wished.  Appellant started his vehicle, returned to
the area where he met the complainant, let her out of the vehicle with the
instructions that she stay off the streets or be arrested by appellant=s partners whom he had
notified of the complainant.  The
complainant exited the vehicle, walked behind the car and memorized the license
plate number.  The complainant also
testified that she related this event to a man named Henry.  She knew nothing more of this individual
other than he lived on the streets and had gone to jail.  She also told John Savoy of this incident.

The complainant saw
appellant the next day in the same car bearing the same license plates.  The following day, she reported the incident
to Officer Brian Gately, a patrolman with the Galveston Police Department.  The complainant gave a written statement
describing the incident.  She was later
shown a photographic line-up of six white males by Sergeant Richard Kershaw,
and warned to not select anyone unless she was certain.  The complainant positively identified
appellant as the person who identified himself as a peace officer, and who
forced her to have oral sex.








On cross-examination,
the complainant admitted that at the time of the alleged offenses she was
addicted to crack cocaine, and used the proceeds from prostitution to afford
her addiction.  She admitted being in
trouble with the law in the past, but had since rid herself of the addiction to
crack cocaine, had re-married and was living a stable life in another city.  The complainant testified she did not make
these allegations against appellant to avoid any criminal liability or
punishment.








Regarding the alleged
offenses, the complainant testified she had not ingested cocaine within the
last twenty-four hours because she had an appetite, and was walking to the Jack
in the Box for a meal.[2]  The complainant testified appellant flashed a
badge and told her to get in the car. 
She testified the badge was in Alike a wallet flip
thing.@  That she heard policemen talking on appellant=s radio in the back
seat.  The complainant testified that she
walked behind appellant=s car and Agot the license plate
number@ from the vehicle
which was stopped at a stop sign.  She
walked to Henry=s apartment and wrote
down the license plate number on a piece of paper, and memorized the
number.  She was unsure if Henry saw
appellant=s car and described
Henry as Ajust another crack
head.@  She also testified that she did not mention
Henry to either Gately or Kershaw.  The
complainant testified she did not immediately report the incident Abecause I thought he
was a real police officer and I deserved what he had done.@  She explained: AI just felt like at that point in time where my
life was that I had deserved what happened to me.@  The
complainant decided to confide in Gately after seeing appellant the second time
because she felt appellant was stalking her. 
She repeatedly stated that she knew the time of this incident because
she saw the clock on the dashboard which displayed 7:50 p.m.  She was later impeached with her statement
wherein she said the time was 6:50 p.m.

Near the conclusion of
this cross-examination, the following exchange occurred:

DEFENSE COUNSEL: You
described the man as a 200-pound man. 
You realize this gentleman sitting here next to you is, like, 265
pounds?

 

A.  No, sir.

 

Q.  Did the gentleman that was in that car, was
he substantially lighter than this gentleman sitting here?  If this is the man that you=re alleging did this
to you, if this is him, has he put on 65 pounds?

 

A.  I don=t know, sir.

 

Q.  You would agree with me that=s a substantial
difference?

 

A.  Yes, sir.

 

Q.  Is 200 pounds a fair weight for what the man
weighed?

 

A.  If I looked at him now, I would say I thought
he weighed 200 pounds.

 

Q.  You realize [the prosecutor] is closer to 200
pounds than I am and he=s probably
substantially more than I am?

 

A.  No, sir. 
I don=t know that.

Finally, the
complainant testified regarding the photo spread that she was not told by
Kershaw who to select, or that the person suspected of committing these
offenses was in the spread.








Brian Gately was
employed as a police officer for the City of Galveston, and assigned to patrol
the area where the complainant worked as a prostitute.  On December 20, 1997, the complainant
approached Gately and stated she had been forced to have sex with a man who
identified himself as a peace officer. 
The complainant described the badge, the type of sex she was forced to
perform, where the event took place, that she overhead a conversation on a
police radio, and gave Gately a piece of paper with the license plate number
DLW 17T written on it.[3]  Gately testified the vehicle bearing that
license plate number was registered to appellant, and the registration provided
appellant=s address.  Gately notified his supervisor which is the
protocol when a complaint is made against a police officer.  Gately transported the complainant to the
police station where she made a statement.








The third witness,
Sergeant Richard Kershaw of the Criminal Investigation Division of the
Galveston Police Department read the report prepared by Gately and spoke to the
complainant, Kershaw went to appellant=s place of employment,
the Texas City unit of the Department of Criminal Justice, Institutional
Division.  In the employees= parking lot, Kershaw
saw a four-door, maroon Chevrolet bearing the license plate number the
complainant had given Gately.  As
appellant approached, Kershaw noted how Aextremely accurate@ appellant=s appearance was to
the description given by the complainant.

Kershaw identified
himself and said he was investigating a report from a prostitute who stated she
had been forced to have sex with a man who identified himself as a police
officer.  Appellant admitted owning the
vehicle, and stated no one had borrowed it. 
Appellant denied having a badge, but stated that he had a police scanner
which he retrieved from underneath the front seat.  Appellant agreed to meet Kershaw the
following morning at the police station.[4]  At that meeting, appellant denied
participating in the events described by the complainant.  When shown a photograph of the complainant,
appellant denied having ever seen her.








Kershaw took a
photograph of appellant, and placed it in a lineup which he showed to the
complainant.  After explaining to the
complainant the procedure, the complainant identified appellant.[5]  Kershaw obtained search warrants for
appellant=s automobile and
apartment authorizing seizure of the scanner and badge.  Kershaw executed those warrants and seized
the scanner from appellant=s car.  Appellant was then transported to his
apartment where he gave Kershaw a black wallet with a badge attached.

On cross-examination,
Kershaw testified he was not aware of any charges pending against the
complainant at the time of his investigation of the instant case(s).  And Kershaw also stated he never received a piece
of paper with a license plate number written on it.

The fourth witness was
Gerald Larsen of the Internal Affairs Division of the Texas Department of
Criminal Justice.  Larsen testified
appellant was a Correctional Officer III. 
In that capacity, appellant was not a licensed peace officer in the
State of Texas.  Larsen testified that
corrections officers did not use badges for identification purposes.  Furthermore, there was no reason for
appellant to carry a badge to discharge his duties as a corrections
officer.  Larsen confirmed appellant=s initial denial to
Kershaw of having any type of badge.

ii.  Extraneous Offense Evidence and Objections.








At the conclusion of
the testimony of these four witnesses, the State sought permission to introduce
evidence of two extraneous offenses.  The
prosecutor argued this evidence was admissible Abecause our only identification witness in this
case, [the complainant], has been impeached by the Defense attorney.@[6]  The trial judge agreed to hear this evidence
outside the presence of the jury.  

Erica Cavender
testified that in the Spring of 1997, she was working as a prostitute when
approached by appellant who was driving a maroon vehicle.[7]  Appellant identified himself as a police
officer, and asked Cavender to perform oral sex.  Cavender heard a Apolice type radio@ in the car.  When Cavender asked how much money appellant
was willing to pay he stated six or seven dollars.  Cavender refused to perform the sex act for
that amount, and walked away.  Appellant
left only to return, and have another conversation with Cavender.  At this point, appellant said he would not
arrest Cavender if she would go with appellant. 
Cavender said she would take her chances, and appellant left.  Cavender identified appellant from the photo
spread prepared by Kershaw.  Cavender
testified appellant never exhibited a badge.








Angelina Edenfield was
also a prostitute in Galveston.  Around
Labor Day of 1997, she was approached by appellant in a maroon vehicle.  Appellant asked Edenfield how much she would
charge to perform oral sex.  Edenfield
asked appellant if he was a police officer and appellant answered ANo.@  After the two fondled each other, Edenfield
got into appellant=s car and they drove
to East Beach.  Once there, appellant
pulled out a badge from the sun visor, and said he was a Texas City police
officer working a sting operation in Galveston. 
Appellant stated he would not arrest Edenfield if she performed sexual
acts.  Edenfield said either arrest me or
pay me.  Appellant became irate and
struck Edenfield.  At that point,
Edenfield became fearful and performed both oral and vaginal intercourse on
appellant.  Appellant then returned
Edenfield to the area where they met. 
Edenfield identified appellant from the photo spread prepared by
Kershaw.

At the conclusion of
this testimony, defense objected to the admission of this evidence under both
Rules 404(b) and 403 of the Texas Rules of Evidence.  He further argued that he had not made
identification an issue.[8]  The trial judge overruled the
objections.  Cavender and Edenfield then
testified before the jury providing essentially the same information as set
forth above.[9]  The trial judge did not provide a limiting
instruction regarding this testimony.  At
the conclusion of this testimony the State rested.

B.  Appellant=s Case In Chief.








Defense counsel
re-called Cavender who testified that although she was housed in the same area
of the Galveston County jail, she and Edenfield had not discussed their
testimony.  Counsel also re-called the
complainant who testified she had not violated the Rule of Sequestration, and
did not remember whether she gave Kershaw the names of Cavender and Edenfield.  The complainant stated that while working as
a prostitute, she saw Cavender on a regular basis, but did not know
Edenfield.  At the conclusion of this
testimony, appellant rested.

C.  Jury Instructions and Closing Arguments.

In the jury charge(s),
the trial judge instructed the jury to limit their consideration of the
testimony of Cavender and Edenfield to the issue of identity.  During closing arguments, both the prosecutor
and defense counsel referred to the extraneous offense testimony.  The jury returned guilty verdicts in each
case.

II.  Admissibility of Extraneous Offense Evidence.

Trial counsel=s specific and timely
objections on the basis or Rules 404(b) and 403 of the Texas Rules of Evidence
preserved this issue for our review.  For
the following reasons, we need only address the Rule 404(b) argument.

A.  Rule 404(b) Generally.








Perhaps no rule of law
is more firmly recognized in criminal jurisprudence than that the accused may
be tried only for the offense charged, and not for some collateral crime
or for being a criminal generally.  This
fundamental tenet is incorporated into our law at Rule 404(b) of the Texas
Rules of Evidence which prohibits extraneous offense evidence from being
offered to prove character conformity. 
However, such evidence may be admissible if it has relevance apart from
character conformity.  Montgomery v. State,
810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh=g).  Extraneous offense evidence has relevance
apart from character conformity in three limited circumstances: where the
evidence is relevant to (1) an elemental fact such as identity or intent; (2)
an evidentiary fact such as motive or opportunity that inferentially leads to
an elemental fact; or (3) defensive evidence such as accident or mistake that
undermines an elemental fact.  Montgomery,
810 S.W.2d at  387‑88.  We review the decision to admit such evidence
under an abuse of discretion standard of appellate review.  Id. at 391.  In this context, if the trial court=s ruling was within
the zone of reasonable disagreement the appellate court will not
intercede.  Id.

As a threshold matter,
before extraneous offense evidence may be admitted for any of the three reasons
set forth above, there must be a dispute as to an elemental or evidentiary
fact.  Webb v. State, 36 S.W.3d
164, 181 (Tex. App.BHouston [14th Dist.]
2000, pet. ref'd).  Without a dispute the
extraneous offense evidence has no relevance apart from the defendant's
character and is, therefore, inadmissible. 
Id.  For example, identity
is an elemental fact in every criminal case. 
However, simply because identity is an essential element in every case,
it does not necessarily follow that identity is at issue or in
dispute in each case to the extent that extraneous offense evidence is
admissible.  Lane v. State, 933
S.W.2d 504, 519 (Tex. Crim. App. 1996) (AAn extraneous offense
may be admissible to show identity only when identity is an issue in the
case.@).  To hold otherwise would totally eviscerate
rule 404(b) and the policies underlying the prohibition against the admission
of such evidence.








Moreover, it is rare
that extraneous offense evidence will be admissible during the presentation of
the State=s case in chief;
normally the dispute as to an elemental fact or evidentiary fact does not arise
unless and until the defendant presents a case in chief.  Reyes v. State, 69 S.W.3d 725, 737
(Tex. App.BCorpus Christi 2002,
pet. filed).  However, identity may be
placed at issue or in dispute through the cross-examination of
the identifying witness.  This occurs
only when the identifying witness has been impeached about (1) a material
detail of the identification; (2) the conditions surrounding the charged
offense and the witness' identification of the defendant in that situation; or,
(3) an earlier misidentification of the defendant.  Siqueiros v. State, 685 S.W.2d 68, 71
(Tex. Crim. App.1985).

The State cited Siqueiros
in the trial court to support its argument for admitting the extraneous
evidence testimony of Cavender and Edenfield. 
Since the complainant=s identification of
appellant was not impeached because of the conditions surrounding the charged
offenses and her identification of the defendant at that time, or because of an
earlier misidentification of appellant, we must determine whether the
complainant=s testimony was
impeached about a material detail of her identification of appellant.  Id. 
The only possible impeachment was appellant=s weight.  That portion of the testimony is set out in
full above.  The issue therefore is
twofold: was the complainant impeached; and, if so, was appellant=s weight a Amaterial detail@ of the complainant=s identification.  Id.

B.  Was The Complainant Impeached?








On direct examination,
the complainant provided the following description of the driver:  Aa white man, had blond
hair parted on the side, and he had a baby face and wasn=t muscular.  He was kind of chunky.@  The subject of weight was not mentioned on
direct examination but rather broached for the first time on
cross-examination.  Defense counsel first
asked the complainant if she realized appellant weighed 265 pounds, and the
complainant answered, ANo, sir.@  Next, defense counsel asked the complainant
if appellant had put on sixty-five pounds since the alleged offenses, the
complainant responded, AI don=t know, sir.@  The complainant explained: AIf I looked at him
now, I would say I thought he weighed 200 pounds.@  Finally,
when the complainant was asked whether she realized the prosecutor was closer
to 200 pounds than defense counsel, the complainant stated: ANo, sir.  I don=t know that.@[10]  This cross-examination simply does not rise
to the level of impeachment.








Moreover, the effect
of the questions propounded on cross‑examination was inconsequential in
relation to the overall strength of the State's case proving the elemental fact
of identity.  The complainant=s identification of
appellant was corroborated by both Gately and Kershaw.  The complainant described to Gately the
badge, overhearing a conversation on a police radio, and the license plate
number of the vehicle, DLW 17T.  Kershaw
characterized the complainant=s initial description
of her assailant as Aextremely accurate@ in relation of
appellant.  Kershaw testified the
complainant positively identified appellant from the photographic line-up.  Moreover, Kershaw recovered a police scanner
from appellant=s vehicle bearing the
licence plate number the complainant gave to Gately.[11]  Finally, Kershaw seized a badge from
appellant=s residence.[12]  Accordingly, we hold the elemental fact of
identity was not at issue or in dispute because the complainant
was not impeached on cross-examination regarding her identification of
appellant.








Additionally, the
facts of the instant case stand in stark contrast to those in Siqueiros.  There the prosecutrix admitted on
cross-examination, inter alia: (1) the conditions on the evening of the
alleged offense were not conducive to an accurate identification (the lighting
was bad, she could not see the dial on her digital clock beside her bed, and
she had drunk three beers and smoked marihuana before going to bed); (2) not
telling the scene officer that the assailant had a mustache (trial counsel then
drew attention to the fact that the defendant had a mustache); (3) when she put
together a composite drawing of her assailant, she told the detective she had
difficulty recalling her assailant's face; (4) the composite drawing produced
in that meeting did not resemble the defendant; (5) when she picked appellant's
photo from a line‑up, she told the officers that she "cannot be
positive" of her identification; and (6) at a voice line‑up she told
an officer that her assailant's voice was familiar, but could not identify any
of the voices as being the appellant's.  Siqueiros,
685 S.W.2d at 69-70.  Additionally, the
non-identifying witnesses offered by the State did not corroborate the
identification of the defendant but, instead, undermined it.  Detective Beltran testified (1) the
prosecutrix did not say her assailant had a mustache; (2) the prosecutrix said
she could not be positive of her identification of the defendant in the photo
line‑up (Beltran noted in his report that the prosecutrix=s identification was
tentative.); and (3) the prosecutrix failed to pick the appellant's voice from
a voice line‑up.  Also, the
treating physician testified the prosecutrix admitted consuming five or six
beers on the night of the attack.  Id.  Accordingly, we hold Siqueiros does
not support the trial judge=s decision to admit
the extraneous offense evidence in the instant case.

Because the
complainant was not impeached on cross-examination regarding her identification
of appellant, the trial judge abused his discretion in admitting the extraneous
offense testimony of Cavender and Edenfield.

 

C.  Material Detail of Identification.

Assuming arguendo the
complainant was impeached, we will determine whether that impeachment related
to a material detail of her identification of appellant.  Black's Law Dictionary defines "material"
as "important."  Black's Law Dictionary 747 (6th ed.
1990); see also Ballentine's Law
Dictionary 781 (3rd ed. 1969) (defining "material" as
"important"); Webster's Ninth
New Collegiate Dictionary 733 (9th ed. 1988) ("material"
defined as "having real importance or great consequences").  Unless specifically asked or weighed, a
person=s weight is a matter
of estimation or guesswork.  The accuracy
of such an estimate or guess is dependent upon the ability to view the dimensions
and size of the full body, whether the individual was naked or clothed and, if
clothed, the type of clothing being worn.








In the instant case,
appellant was seated in a vehicle at the time(s) the complainant formed her
identification.  Under these
circumstances, the complainant=s report of appellant=s weight would be
nothing more than an unimportant guess of no probative value.  This lack of importance is underscored in
light of her accurate description of appellant by race, the color of his hair
and how it was parted, facial features, and build.

Accordingly, we hold
that even if the complainant had been impeached, the impeachment was not
related to a Amaterial detail@ of her identification
of appellant because appellant=s weight was
unimportant in relation to the other details of the complainant=s description.  Therefore, for this alternative reason, we
hold the trial judge abused his discretion in admitting the extraneous evidence
testimony of Cavender and Edenfield.[13]

III.  Harm Analysis.








As a general rule,
Rule 44.2(b) of the Texas Rules of Appellate Procedure prescribes the harm
analysis for error stemming from the erroneous admission of extraneous offense
evidence.  Tex. R. App. P. 44.2(b); Reyes, 69 S.W.3d at 742.
Under that rule, error that does not affect a substantial right must be
disregarded.  A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury's verdict.  King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos
v. U.S., 328 U.S. 750, 776 (1946)). 
An error has no influence or only a slight influence on the verdict is
harmless.  Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998). 
However, if the reviewing court is unsure whether the error affected the
outcome, the court should treat the error as harmful, i.e., as having a
substantial and injurious effect or influence in determining the jury's
verdict.  Webb, 36 S.W.3d at
182.  Neither party has the burden of
proof under rule 44.2(b).  Id.  Rather, the appellate court will examine the
record for purposes of determining harm. 
Id.

Motilla v. State, No. 598-01, 2002 WL
1380912 (Tex. Crim. App. June 26, 2002), is the Court of Criminal Appeals= most recent
pronouncement on how to conduct a harm analysis under Rule 44.2(b).  Several factors are germane:  (1) the evidence admitted, (2) the nature of
the evidence supporting the verdict, including whether this evidence was
overwhelming; (3) the character of the alleged error and how it might be
considered in connection with other evidence in the case; (4) the jury
instructions; (5) the State's theory and any defensive theories; (6) closing
arguments; (7) voir dire; and, (8) whether the State emphasized the error.  Id., 2002 WL 1380912, at *2-3.  We will consider each of these factors in
connection with the instant case.








The evidence admitted
before the jury is recounted in Part I, supra.  Regarding the nature and character of the
evidence, we are mindful that the Court of Criminal Appeals has Aconsistently
acknowledged that the introduction of extraneous offenses to the jury is
inherently prejudicial, and hence, harms the defendant, because it requires the
defendant to defend against not only the offense charged but also his uncharged
actions.  The admission of extraneous
offenses also prejudices the defendant because of the jury's natural
inclination to infer guilt to the charged offense from the extraneous offenses.@  Abdnor v. State, 871 S.W.2d 726, 738
(Tex. Crim. App. 1994) (internal citations and quotation marks deleted).  Further, the prejudicial effect is greater
from the admission of criminal extraneous conduct rather than noncriminal
conduct.  Plante v. State, 692
S.W.2d 487, 490 n.3 (Tex. Crim. App. 1985). 
Finally, we know from established precedent that evidence of sexually
related misconduct is not only prejudicial but inherently inflammatory.  Bishop v. State, 869 S.W.2d 342, 346
(Tex. Crim. App. 1993).








The harm in the
present case is compounded because the error lead to the admission of not one
but two separate and distinct extraneous offenses, involving two different
victims.  Moreover, neither Cavender=s nor Edenfield=s testimony contains a
single word about appellant=s weight.  The absence of any testimony related to the
sole basis for admitting the extraneous offense evidence militates toward a
conclusion that the evidence was considered for an improper purpose.  See n.6, supra. Additionally,
we recognize that in cases, such as this, where there is little or no
controverting evidence offered by the defendant, the use of an extraneous
offense is unnecessary and posses virtually no probative value.  Robinson v. State, 701 S.W.2d 895,
898-99 (Tex. Crim. App. 1985) (citing Prior v. State, 647 S.W.2d 956,
959 (Tex. Crim. App. 1983)).

Further, we hold the
evidence of guilt was far from overwhelming. 
While the license plate number, scanner and badge established a
relationship between the complainant and appellant, the extent of that
relationship was far from settled.[14]  The ultimate issue was whether appellant
impersonated a peace officer in an effort to obtain sexual gratification from
the complainant.  Resolution of this
issue depended upon the credibility of the complainant.  Accordingly, both the State and appellant
spent a great deal of their time during voir dire on the issue of credibility,
specifically the credibility of a prostitute, and one who abused drugs.  While the jury was entitled to believe the
complainant=s testimony, in the
context of this case, that testimony does not present overwhelming evidence of
guilt.








Regarding jury
instructions, the trial judge did not provide a limiting instruction before
admitting the testimony of Cavender and Edenfield.  Therefore, the testimony was before the jury
not for the limited purpose of identification, but for all purposes. Hammock
v. State, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001).  It necessarily follows that by the time the
jury was instructed on the limited purpose for which the evidence was admitted
that instruction was ineffacious because A[w]here the jurors
have been accumulating their impressions of the evidence over the course of the
trial, it is impossible for them to go back at the close of the trial and
reassess the evidence in light of the limiting instruction.@  Rankin v. State, 974 S.W.2d 707, 712
(Tex. Crim. App. 1996) (Limiting instructions given for the first time during
the jury charge are not effective due to possibility evidence will be used for
impermissible purpose).  Therefore, the
limiting instruction provided in the jury charge does not militate in favor of
finding the error harmless.

We next consider the
factors of closing argument and whether the State emphasized the error.  The State repeatedly referred to the
testimony of Cavender and Edenfield during it closing arguments; to our count,
the prosecutor mentioned the erroneously admitted testimony seven times.  The State argued the case boiled down to the
testimony of the complainant, and then asked the jury to use the testimony of
Cavender and Edenfield to corroborate the complainant=s identity of
appellant Aas being the one who
represented himself as a peace officer and forced her to perform oral sex on
him.@  At another point, the prosecutor referred to
the complainant, Cavender and Edenfield to describe appellant as a
predator.  Although the prosecutor
frequently mentioned identity, the references to the testimony of Cavender and
Edenfield were, in reality, improper attempts to bolster the credibility of the
complainant, and encouraged the jury to convict because appellant=s conduct in the
charged case(s) was in conformity of his character of mistreating prostitutes.








For these reasons, we
hold the error admitting the extraneous offense evidence in the testimony of
Cavender and Edenfield had a substantial and injurious effect or influence on
the jury's verdict.  Consequently, we hold
a substantial right was affected and, therefore, the error cannot be
disregarded.  Tex. R. App. P. 44.2(b).

Having found the trial
judge erred in admitting the extraneous offense evidence, and that said error
affected the substantial rights of appellant, we reverse the judgment of the
trial court in cause numbers 98CR0911 and 98CR0913 and remand for further
proceedings consistent with this opinion.[15]

 

                                                   


CHARLES F.
BAIRD

Justice

 

 

Publish. 


Tex. R. App. P. 47.3.

 

Opinion delivered and filed this the

29th day of August, 2002.

 











[1]
Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court
by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998).





[2]  When consuming cocaine the complainant did
not have an appetite. 





[3]  Gately was permitted to relate the
information received from the complainant over appellant=s
hearsay objection.  The State argued the
testimony was not being offered for the truth of the matter asserted, but to
show the complainant made the complaint. 
The State did not cite any authority for this proposition. Apparently
the State was relying upon that body of law which permits police officers to
explain how the defendant became a suspect. 
Dinkins v. State, 894 S.W.2d 330, 347-48 (Tex. Crim. App.
1995).  However, the Court of Criminal
Appeals has recognized that rule of evidence had led to confusion which has
resulted in Awidespread
abuse.@   Schaffer v. State, 777 S.W.2d 111,
114 n.3 (Tex. Crim. App. 1989).  The Schaffer
Court attempted to eliminate this confusion by holding peace officers should be
allowed some latitude to explain their presence at the scene or their conduct
during the investigation.  Id. at
114.  But the Schaffer Court
specifically held an officer Ashould not be permitted to
relate historical aspects of the case, replete with hearsay statements in the
form of complaints and reports on grounds that she was entitled to tell the
jury the information upon which she acted.@  Id. at 115.  The Schaffer Court ultimately held the
complained of testimony was, in fact, hearsay. 
Id.  The same is true in
the instant case.  Although not
dispositive of the issue presented in this appeal, we offer this footnote in
the event of a retrial.





[4]  Kershaw testified that appellant appeared
with retained counsel at this meeting. 
There was no objection to this line of questioning.  Article 38.38 of the Code of Criminal
Procedure provides:

 

Evidence
that a person has contacted or retained an attorney is not admissible on the
issue of whether the person committed a criminal offense. In a criminal
case, neither the judge nor the attorney representing the state may comment on
the fact that the defendant has contacted or retained an attorney in the case.  (Emphasis added)

 

Tex. Code Crim. Proc. Ann. art.
38.38 (Vernon Supp. 2002).





[5]  Specifically, Kershaw read the following
instructions:

 

You will be asked to look at a group of
photographs.  The fact that the
photographs are shown to you should not influence your judgment.  You should not conclude or guess that the
photographs contain the picture of the person who committed the crime.  You are not obligated to identify
anyone.  It is just as important to free
innocent persons from suspicion as to identify guilty parties.  Please do not discuss the case with other
witnesses nor indicate in any way that you have identified someone.





[6]  The prosecutor explained:

 

One of the ways the Defense attorney has
impeached her was by the weight description that she gave of the
Defendant.  She talked to the
police.  She said approximately 200
pounds; and [defense counsel] made it a point to point at the Defendant and say
that, >You=re
aware this man is 260 pounds= and made a very big issue in
front of the jury about how far off she was on his weight.@





[7]  It is the author=s
policy to not refer to complainants by name. 
However, because of the circumstances presented in this case that policy
cannot be followed.





[8]  Specifically, counsel stated:

 

I think there is little doubt that the 12
jurors B I
mean, because of the badge, the car, the license plate and the baby face and
the chunkiness of the man, there=s no doubt that these people
here believe that this is the person [the complainant=s]
talking about. ...  I mean there=s no
doubt -- that jury has no doubt that these two people -- something went on
between them because she nails him to a >T.=
...  Your Honor, ... just to make a
suggestion to the Court.  If we are
concerned here about an identification argument, put me under a directive from
the Court not to argue identity; therefore, if I do, we have a problem.  I have no intentions of arguing
identity.  Never have.  This isn=t an identification
case.  Never has been.  If that=s the concern, we=re
never going to make that argument.





[9]  For the purposes of this opinion, we consider
only the evidence adduced at the hearing outside the jury=s
presence because the trial judge=s ruling was based on that
evidence rather than the evidence introduced later before the jury.  Rachal v. State, 917 S.W.2d 799, 809
(Tex. Crim. App. 1996); Hardesty v. State, 667 S.W.2d 130, 135 n.6 (Tex.
Crim. App. 1984).





[10]  We pause here to note that defense counsel
conceded the identification of appellant in his cross-examination of the
complainant when he asked: A How long did you talk to Mr.
Page on the side of the road?@  And the complainant responded:  AWasn=t
really much of a conversation....  It was
him telling me, >Hey,
come here= and
I walked over to the car and he flashed a badge, said, >Get
in.  I=m the police.=@





[11]  Kershaw testified that appellant stated no
one had borrowed the vehicle.





[12]  As noted above, the complainant described as
being in Aa
wallet flip thing.@  Kershaw testified the badge was in a black
wallet.  Moreover, appellant denied
having a badge to both Kershaw and Larsen.





[13]  In the trial court, the State also argued the
extraneous offense evidence of Cavender and Edenfield was admissible because
defense counsel (1) questioned the complainant about her drug use, and (2)
attempted to show Kershaw used a tainted photo spread.  We need not address these arguments in the
body of this opinion because they were not advanced by the State in its
brief.  And even if briefed, such
arguments have been held to be meritless. 
The complainant=s
testimony about drug use cannot serve as a basis for the admission of
extraneous offense evidence because such evidence cannot serve to rehabilitate
the credibility of a complaining witness. 
Pavlacka v. State, 892 S.W.2d 897, 903 (Tex. Crim. App.
1994).  This is so because the
rehabilitative value of the evidence would derive solely from the impermissible
inference that the defendant acted in conformity with his character.   Webb v. State, 36 S.W.3d 164, 181 n.9
(Tex. App.BHouston
[14th Dist.] 2000, pet. ref'd) (specifically rejecting argument that cross‑examination
challenging the complaining witness's credibility or recall provides basis for
admission of extraneous offense evidence). 
Additionally, the extraneous offense evidence was not admissible in
relation to Kershaw because he was not an identifying witness.  In this context, an identifying witness is
one who was present at the scene and personally identified the accused.  Siqueiros, 685 S.W.2d at 69
(Prosecutrix was the State's only Aidentifying witness.@).  The State admitted as much in the trial court
by describing the complainant as Aour only identification
witness in this case.@  See part I, A, ii, supra.





[14] The
bare fact that a relationship between the complainant and appellant existed has
no probative force.  The complainant had
a relationship with Officer Gately, but not of a sexual nature.  And, when interviewed by Kershaw, appellant
admitted having a consensual sexual relationship with another female who he
picked up and took to the movies.





[15]  Having found the trial judge erred in
admitting the extraneous evidence testimony of Cavender and Edenfield over
appellant=s
timely Rule 404(b) objection, we do not address appellant=s
Rule 403 arguments.