Andy James Ortiz

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-441-CR

ANDY JAMES ORTIZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Andy James Ortiz was convicted of capital murder and sentenced to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  In one point on appeal, Appellant complains that the trial court abused its discretion by admitting evidence of an extraneous capital murder during the State’s case-in-chief.  At trial, Appellant raised several arguments against the admission of the extraneous offense.  But on appeal, Appellant appears to limit his arguments to the following:

(1) the trial court abused its discretion by admitting the evidence because  under rule of evidence 404(b), identity was not an issue; and

 

(2) the trial court abused its discretion by admitting the evidence because under rule of evidence 403, the probative value of the evidence was substantially outweighed by the risk of unfair prejudice.

Because we hold that identity was an issue in this case and that the probative value of the extraneous offense evidence was not substantially outweighed by the risk of unfair prejudice, we affirm the trial court’s judgment.

I.  Factual Background

The evidence showed that on a Sunday night, the complainant’s brother discovered her body face-up, covered with sheets, in their parents’ bedroom.  Her bra was pushed up and her panties were pushed down to reveal her breasts and genitalia.  She had been strangled with shoelaces taken from her brother’s tennis shoes and had suffered two blows to the head and vaginal tearing.  The investigating officer obtained samples of Appellant’s blood, saliva, and hair. There was no evidence that any semen was discovered on the body or at the crime scene, but Appellant’s DNA was found under the complainant’s fingernails.

The State offered extraneous offense testimony on the issue of identity. The prosecutor stated that Appellant had raised a defensive theory on cross-examination that would provide an explanation other than aggravated sexual assault and murder for the presence of his DNA at the scene—specifically, that Appellant and the complainant had a prior relationship.  Appellant argued at trial that the State had opened the door regarding evidence of a prior relationship and that he had done nothing to diminish the State’s case on the identity issue.  The extraneous offense was admitted for the limited purpose for which it was offered over Appellant’s objection.  

Evidence showed that the complainant in the extraneous offense, an adult female, had shared an apartment with a roommate near DFW Airport.  After a weekend trip to Austin, her roommate discovered the complainant’s body in the living area of the apartment.  The body was covered with sheets, clothed, and face-down.  The complainant had been bound with the cord from an electric iron in the home; the iron was still attached.  She had been strangled with a brown leather belt.  She had also received a blow to the head.  Semen later identified as Appellant’s was found in her mouth.  The home had been ransacked, some items were missing from the home, and the complainant’s abandoned car, on which Appellant’s fingerprints were located, had been found a few miles away.

The limiting instruction in the jury charge stated that the jury could only consider the extraneous offense evidence “in determining the identity of the Defendant in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.”  The judge similarly instructed the jury during the presentation of the extraneous offense evidence. 

II.  Identity and Rule 404(
b
)

Appellant first argues that “identity was never brought into issue” and that “this record reflects an absence of impeachment of any identifying witness.”  We disagree.  Under rule 404(b), evidence of an extraneous offense may be admitted to prove identity.
(footnote: 2)  But an extraneous offense may be admitted to show identity only if identity is an issue in the case.
(footnote: 3)  The defense may raise the issue during cross-examination of the State’s witnesses.
(footnote: 4)
 The fifteen-year-old complainant’s mother was the State’s first witness.  On cross-examination, she testified that she had found a letter from Appellant in her daughter’s room some time after her death.  That letter established that Appellant and the complainant had some type of relationship.  The complainant’s brother testified next for the State.  On direct examination, he was asked if he had ever met Appellant before the murder.  He responded that Appellant had stopped by the family’s house one time but had not gotten out of his vehicle.  On cross-examination by the defense, the witness stated that the incident had occurred months before and that Appellant had asked for the complainant.  He also stated that the complainant had mentioned Appellant’s name in passing.  

A neighborhood girl testified on direct examination by the State that she had seen Appellant jogging from the complainant’s family’s backyard on the evening of the offense.  The complainant’s cousin then testified on direct examination by the State that he had seen Appellant with the complainant on her family’s front porch that same evening.  On cross-examination by the defense, the cousin testified that the complainant had not seemed scared of Appellant.  Appellant highlighted the conflicts in these two eyewitnesses’ testimony concerning the clothing Appellant was allegedly wearing and the time that he was allegedly spotted at the scene.  The forensic DNA analyst then testified on direct examination that Appellant’s DNA was found under the complainant’s fingernails.  After that witness, the State introduced the extraneous offense evidence.  

Based on the testimony elicited by the defense, we hold that identity was an issue under rule 404(b).  Other than contending that identity was not an issue at trial, Appellant has raised no arguments on appeal relating to the admissibility of the extraneous offense to prove identity under rule 404(b).
(footnote: 5)  We are therefore constrained to hold that the trial court did not abuse its discretion by admitting the extraneous offense under this rule.

III.  Rule 403 Balancing Test
 

Appellant next complains that the extraneous offense evidence was inadmissible under rule 403.  Rule 403 provides that relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.”
(footnote: 6)  The rule favors admissibility over exclusion.
(footnote: 7) 
 Factors that trial courts should consider in the balancing test include:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury “in some irrational but nevertheless indelible way”;

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.
(footnote: 8)  

Compelling Evidence

In assessing this factor, it is the “inherent probativeness” of the extraneous offense evidence that is the focus of our inquiry.
(footnote: 9)  This “inherent probativeness” is “often, although by no means invariably, a function of the similarity of the extraneous transaction to the charged offense” and “is also a function of the strength of the proponent's evidence to show the opponent in fact committed the extraneous conduct.”
(footnote: 10)  The offenses were similar—both the complainant in the charged offense and the complainant in the extraneous offense had been beaten, sexually assaulted, and strangled.  The probative value of the extraneous offense evidence was lessened by the following differences:

there was no evidence of a relationship in the extraneous offense;

the complainant in the charged offense was a minor teenager; the complainant in the extraneous offense was an adult;

there was no evidence of oral sex in the charged offense or vaginal intercourse in the extraneous offense;

there was no evidence of semen in the charged offense; 

the complainant in the charged offense was not bound;

the bodies were found in different positions;

the charged offense involved no theft or ransacking; and

the extraneous offense occurred near the airport; the charged offense occurred in the neighborhood shared by Appellant and the complainant.

Nevertheless, the presence of Appellant’s DNA in the mouth of the dead complainant who had been knocked in the head, bound, and strangled was strong evidence that Appellant had committed the extraneous offense.  Overall, this factor weighs in favor of admitting the extraneous offense. 

Irrational Impression on Jury

As the 
Montgomery
 court provided, “[S]exually related misconduct . . .  [is] inherently inflammatory.”
(footnote: 11)  However, both the charged offense and the extraneous offense in the case before us involve a aggravated sexual assault-murder combination of capital murder.  When the extraneous offense is “no more heinous” than the charged offense, it is “not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose.”
(footnote: 12)  Further, in the case before us, the trial court instructed the jury three times to consider the extraneous offense evidence only to determine the identity of Appellant in connection with the charged offense.  Based on these facts, this factor weighs in favor of admitting the extraneous offense evidence.

Time

As Appellant points out, the record reflects that nine witnesses over three volumes testified about the extraneous offense.  The State “agrees that the presentation of the extraneous offense was time consuming.”  Our review of the record shows that based on the number of pages devoted to each offense, only slightly more than thirty percent of the testimony in the case concerned the extraneous offense.  The testimony on the extraneous offense was presented in an afternoon, part of the next morning, and, briefly interspersed with testimony about the charged offense, on the final morning of trial.  At most, the presentation of the evidence of the extraneous offense took one day.  We conclude that this factor weighs in favor of admitting the extraneous offense testimony.

State’s Need for the Evidence

Appellant argues in his brief that the State’s other evidence made the introduction of the extraneous offense unnecessary.  “When the proponent has other compelling or undisputed evidence to establish the proposition or fact that the extraneous misconduct goes to prove, the misconduct evidence will weigh far less than it otherwise might in the probative-versus-prejudicial balance.”
(footnote: 13)  But we see no other “compelling or undisputed evidence” tending to prove that Appellant was the perpetrator of an aggravated sexual assault and murder on the complainant in the charged offense. 

While two witnesses had placed Appellant at the scene of the crime, their testimony conflicted, and these conflicts were highlighted by Appellant.  Additionally, Appellant developed evidence of a relationship to suggest an innocent reason for the presence of Appellant at the crime scene and the presence of his DNA under the complainant’s fingernails.  

After the jury heard the evidence of the extraneous offense, the State called an acquaintance of Appellant’s who testified that in August 1997, he had overheard a conversation between Appellant and David Cotto.  He testified that he had heard “that Andy had committed a rape,” “[t]hat he had hit a young girl and taken her inside . . . the house,” “that he was having sexual intercourse with her,” and “that he heard a noise and he left running.”  The witness had reported the conversation to the detective investigating the charged offense.  Appellant challenged the witness’s credibility by eliciting testimony that in his initial meeting with the detective, he had denied knowing anything about the offense and that the State had dismissed an aggravated assault with a deadly weapon charge against him in exchange for the testimony.

Given Appellant’s vigorous cross-examinations of the three witnesses, the State needed the extraneous offense to tie Appellant to both the aggravated sexual assault and murder portions of the capital murder charge.
(footnote: 14)  We therefore conclude that this factor weighs in favor of admission of the extraneous offense evidence.

Because all the factors weigh in favor of the admission of the extraneous offense evidence, we hold that its probative value was not “substantially outweighed by the danger of unfair prejudice.”
(footnote: 15)  The trial court therefore did not abuse its discretion in admitting the evidence under rule 403.  We overrule Appellant’s sole point.

IV.  
Conclusion

Having overruled Appellant’s sole point, we affirm the judgment of the trial court.

PER CURIAM

PANEL F: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

[Delivered March 13, 2003] 

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Tex. R. Evid.
 404(b).

3:
Lane v. State
, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).

4:
Siqueiros v. State
, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985).

5:
See
,
 e.g., Booker v. State
, No. 2-00-408-CR, slip op. at 19 n.1, 2003 WL 151980, at *9 n.1 (Tex. App.—Fort Worth Jan. 23, 2003, no pet. h.) (op. on reh’g) (issue of whether similarities between the charged offense and the extraneous offense amounted to “signature” regarding identity was analyzed by court when considering relevance of the evidence under rule 404(b)).

6:
Tex. R. Evid.
 403.

7:
Montgomery v. State
, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh’g).

8:
Santellan v. State
, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (footnote omitted) (quoting 
Montgomery
, 810 S.W.2d at 389-90).

9:
Montgomery
, 810 S.W.2d at 389-90.

10:
Id.

11:
Id.
 at 397.

12:
Taylor v. State
, 920 S.W.2d 319, 323 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 951 (1996).

13:
Montgomery
, 810 S.W.2d at 390.

14:
See
 
Tex. Penal Code Ann.
 § 19.03(a)(2) (Vernon 2003).

15:
Tex. R. Evid.
 403.