NO. 12-04-00286-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
JIMMY DARRELL SMITH,                             §                 APPEAL FROM THE 114TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Jimmy Darrell Smith appeals his conviction for aggravated robbery with a deadly weapon,
for which he was sentenced to imprisonment for 65 years. Appellant raises four issues on appeal. 
We affirm.
 
Background
            On August 15, 2002, Andrew Hudson was working at a Dairy Queen restaurant in Lindale,
Texas. As he and a coworker were closing the store, Hudson heard someone knock on the window
at the front of the restaurant. When Hudson went to the door, he met a man wearing blue jeans and
a blue long sleeved shirt. In a photo lineup and later at trial, Hudson identified the man he met at
the door as Appellant, although Hudson admitted in his testimony that he did not get a very good
look at the man’s face. 
            According to Hudson, Appellant told him that the soft drink he had purchased earlier tasted
bad and asked for a replacement. Hudson took the drink to the fountain in the restaurant lobby to
refill it, but when he returned, Appellant had gone. Moments later, Hudson was confronted by a man
wearing an “old man” mask. According to Hudson, the man in the mask was wearing the same
clothes as Appellant was wearing. Hudson further testified that the man in the mask had the same
voice as Appellant.
            Hudson stated that the man in the mask demanded that Hudson and his coworker, Kristie
Ivey, give him money and the restaurant’s surveillance tape. Hudson testified that when Ivey argued
with the man, he brandished a 9 millimeter pistol and struck her in the head with it. According to
Hudson, the man in the mask then loaded a round into the chamber and pointed the gun at both him
and Ivey. Ultimately, Hudson and Ivey gave the man a bag of money and the surveillance tape. The
man then ordered Hudson and Ivey into the restaurant’s walk-in cooler. The two remained in the
cooler briefly, but were able to free themselves by triggering an emergency release on the inside of
the cooler. Hudson then called the police.
            Over objection, the State offered testimony from Casey Melton, an employee at a Subway
restaurant in Lindale. Melton testified that shortly after 10:00 p.m. on August 15, 2002, while he
and his coworkers were closing the restaurant, a man Melton identified in court as Appellant 
knocked on the front door and claimed that the drink he had previously purchased from the restaurant
tasted bad. Melton testified that Appellant was wearing a baseball cap, jeans, and a black or navy
sweatshirt. Melton further testified that he told Appellant he could not let him enter the restaurant
as they were closed, but that Appellant could come to the drive-thru window and have his drink
refilled. Melton stated that soon thereafter, he heard one of his coworkers exclaim, “Sir, what are
you doing? You can’t do that, sir.” Melton testified that he then saw Appellant climb into the
restaurant by way of the drive-thru window. 
            Once inside, according to Melton, Appellant brandished a 9 millimeter pistol and demanded
money from the restaurant’s register as well as the surveillance video tape. When Melton told
Appellant that he did not have the key to the register, Appellant ordered Melton to take him to the
manager’s office to search for the keys while Melton’s coworkers waited in the restaurant’s walk-in
cooler. Melton testified that Appellant told him to look around the manager’s office for keys to the
safe, which Melton did without success. Appellant saw the restaurant’s surveillance system and
ordered Melton to eject the surveillance tape and give it to him. Melton complied. Thereafter,
Appellant and Melton exited the manager’s office, at which time, Melton testified, Appellant donned
an “old man” mask. Appellant continued to search the store in vain for money. Melton testified that
ultimately, Appellant ordered him to get into the walk-in cooler with his coworkers. Melton entered
the cooler and locked the door behind him. Melton stated that he and his coworkers remained in the
cooler for between thirty and forty-five minutes before he exited the cooler and called the police.


 
Later, in a photo lineup, Melton identified Appellant as the same man who had robbed the Subway
restaurant.
            Following the testimony of other witnesses, the State rested. Appellant moved for a directed
verdict, which the court denied. The defense then rested its case without calling any witnesses. 
Ultimately, the jury found Appellant guilty as charged and assessed punishment at imprisonment for 
65 years. The trial court sentenced Appellant accordingly, and this appeal followed.
 
Improper Jury Argument
            In his first issue, Appellant argues that the trial court erred by denying his motion for mistrial
concerning a statement the prosecutor made during jury argument. Specifically, the prosecutor
stated, “Is there any doubt that this man had a firearm? Has there been any evidence to the
contrary?”
            It is well settled that a prosecutor cannot comment on a defendant’s failure to testify. Owen
v. State, 656 S.W.2d 458, 459 (Tex. Crim. App. 1983). Such comments violate an accused’s right
against self-incrimination contained in the Fifth Amendment to the United States Constitution and
made applicable to the states through the Fourteenth Amendment. U.S. Const. Amend. V; Tex.
Const. Art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005). Article 38.08 states
as follows:
 
Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the
failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the
same be alluded to or commented on by counsel in the cause.


Tex. Code Crim. Proc. Ann. art. 38.08.
            The prohibition applies to both direct and indirect references to the defendant’s failure to
testify. De Los Santos v. State, 918 S.W.2d 565, 570 (Tex. App.–San Antonio 1996, no writ). The
prejudicial effect of a direct comment on the defendant’s failure to testify often cannot be cured by
an instruction to the jury to disregard. See Gardener v. State, 730 S.W.2d 675, 700 n.13 (Tex. Crim.
App. 1987). For an indirect comment to constitute reversible error, it must call for a denial of an
assertion of fact or contradictory evidence that only the defendant is in a position to offer. See
Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992). 
            Thus, for example, when there is no testimony suggesting the defendant’s lack of remorse,
a comment upon the lack of remorse would naturally and necessarily be one upon the defendant’s
failure to testify because only a defendant can testify as to his own remorse. Id.; Dickinson v. State,
685 S.W.2d 320, 324 (Tex. Crim. App 1984). However, when there is evidence in the record
indicating a lack of remorse, a comment upon the defendant’s lack of remorse does not naturally and
necessarily lead the jury to understand it to be a comment upon the defendant’s failure to testify. 
See, e.g., Caldwell v. State, 818 S.W.2d 790, 800–01 (Tex. Crim. App. 1991), overruled on other
grounds, Castillo v. State, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995); Davis v. State, 782 S.W.2d
211, 222–23 (Tex. Crim. App. 1989). 
            In the case at hand, the prosecutor asked if there had been any evidence to contradict that
Appellant had used a firearm. There were, at most, three witnesses to the Dairy Queen robbery who
could have offered evidence as to whether or not a firearm was used during the commission of the
robbery—Hudson, Ivey, and Appellant. Thus, the prosecutor’s statement did not call for a denial
of an assertion of fact or contradictory evidence that only Appellant was in a position to offer. 
Therefore, we hold that the trial court did not err in overruling Appellant’s motion for mistrial as the
prosecutor’s statement did not amount to a comment on Appellant’s failure to testify. 
            Appellant further argues that the prosecutor engaged in improper jury argument when he
referred to Appellant as a “coward.” The trial court sustained Appellant’s objection and instructed
the jury to disregard. Appellant did not move for a mistrial. As Appellant’s objection was sustained,
and his request for instruction granted, it is unclear about what error, if any, Appellant complains. 
See Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003) (to preserve error, an objection must
be timely, specific, and pursued to an adverse ruling). Moreover, almost any improper argument may
be cured by an instruction to disregard. See Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App.
1995) (noting that the presumption that an instruction to disregard generally will not cure comment
on failure of the accused to testify has been eroded to the point that it applies only to the most blatant
examples). Appellant has cited no authority,


 nor are we aware of any such authority, holding that
such a comment by a prosecutor could not be cured by an instruction or otherwise did not require
a request for a mistrial to preserve error. Appellant’s first issue is overruled.
 
Extraneous Offense
            In his second issue, Appellant argues that the trial court erroneously admitted evidence
concerning an extraneous offense, the Subway robbery. Texas Rule of Evidence 404(b) states, in
pertinent part, as follows:
 
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order
to show action in conformity therewith. It may, however, be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
accident . . . .


            Here, the State sought to introduce evidence concerning the Subway robbery to prove
identity. The theory of relevance is usually that of modus operandi in which the pattern and
characteristics of the crimes are so distinctively similar that they constitute a signature. See Beets
v. State, 767 S.W.2d 711, 740–41 (Tex. Crim. App. 1987) (noting the defendant’s “signature” use
of the same weapon, the same motive, the same time of day, and the same means of disposing of
bodies in two different murders). The permutations concerning similarities are endless, but in the
final analysis, the court must be content that the evidence of both offenses is so distinct as to
constitute a signature of the defendant. See Avila v. State, 18 S.W.3d 736, 741 (Tex. App.–San
Antonio 2000, no pet.) (similarities common to the type of crime as opposed to peculiarities between
offenses committed not enough to show identity).
            The evidence concerning the Subway robbery contains enough similarities so as to constitute
a signature. The two robberies were committed near in time on the same night. The testimony
reflects that the perpetrator wore jeans and a dark colored long sleeve shirt. The testimony further
reflects that the perpetrator in both robberies used a ruse about having purchased a drink that did not
taste good so as to gain access to the restaurant. The testimony further reflects that the perpetrator
wore a distinctive “old man” mask. Two Subway employees unequivocally identified Appellant as
the man who robbed the Subway restaurant and further testified that Appellant did not put his mask
on until the robbery was well underway.
            Appellant nonetheless argues that the trial court improperly admitted the testimony
concerning the Subway robbery because Hudson identified Appellant as the man who robbed the
Dairy Queen. In other words, Appellant argues that the probative value of the testimony concerning
the Subway robbery did not outweigh its prejudicial effect because Hudson’s identification was
unequivocal and conclusive on the issue. See McGee v. State, 725 S.W.2d 362, 365 (Tex.
App.–Houston [14th Dist.] 1987, no writ) (holding that since adequate evidence of the appellant’s
intent had already been introduced, the inflammatory and prejudicial effect of the extraneous offense
evidence outweighed any probative value it may have had). 
            However, the record reflects that Appellant called Hudson’s identification of Appellant into
question during cross examination. When the State’s only identifying witness is impeached on cross
examination, the issue of identity is raised, and the extraneous offense becomes admissible. 
Siqueiros v. State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985). Here, the record reflects that no one
at the Dairy Queen saw the perpetrator’s face during the robbery inasmuch as he was wearing a mask
throughout the robbery. Hudson’s identification is based on his interactions with the person who
came to the front door just prior to the robbery. Hudson’s identification was based on recognition
of the person’s (1) facial features, (2) voice, and (3) clothes. During cross examination, Hudson
admitted that he did not get a good look at the man’s face. Moreover, Hudson admitted the mask
the perpetrator was wearing covered his mouth and had no mouth hole, potentially impeaching
Hudson’s identification of the perpetrator’s voice as being the same as Appellant’s. We hold that
Appellant’s identity was at issue and the extraneous offense was properly admitted to prove identity. 
Appellant’s second issue is overruled.
 
 
Evidentiary Sufficiency
            In Appellant’s third issue, he argues that the evidence is legally insufficient to support the
jury’s verdict. In Appellant’s fourth issue, he challenges the factual sufficiency of the evidence. 
Appellant’s sufficiency challenge focuses solely on the evidence related to his identity.
Legal Sufficiency
            Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1,
6 (Tex. App.–San Antonio 1999, pet. ref’d). The standard for reviewing a legal sufficiency challenge
is whether any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to
the jury’s verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. 
A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing
court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).
            The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a
charge would include one that “accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the defendant is tried.” Id. 
            To support a conviction for aggravated robbery, the State must show, among other things,
that the defendant is the same person who committed the offense. See Tex. Pen. Code Ann.
§§ 7.01(a), 29.02, 29.03 (Vernon 2003).
            In the case at hand, the record reflects that Hudson identified Appellant as the person who
robbed the Dairy Queen on the night in question. Although the perpetrator wore a mask during the
robbery, Hudson testified that it was the same person who had come to the front door of the
restaurant claiming to have been served a soft drink that tasted bad, whom Hudson identified as
Appellant. Hudson further testified that Appellant wore the same clothing and had the same voice
as the person who, moments later, robbed the Dairy Queen. 
            Further, as discussed in detail above, Melton’s testimony concerning the Subway robbery is
relevant to the issue of identity as it demonstrates a criminal signature. The two robberies were
committed near in time on the same night. Melton’s testimony reflects that the perpetrator wore
jeans and a dark colored long sleeve shirt, similar to what Hudson described as worn by the person
who robbed the Dairy Queen. Melton’s testimony further reflects that Appellant used a ruse about
having purchased a drink that did not taste good so as to gain access to the restaurant. The respective
testimonies of Melton and his coworker further indicate that Appellant donned a distinctive “old
man” mask. Both Melton and his coworker unequivocally identified Appellant as the man who
robbed the Subway restaurant and further testified that Appellant did not put his mask on until the
robbery was well underway.
            Examining the aforementioned evidence in the light most favorable to the jury’s verdict, we
conclude that the jury could have reasonably determined beyond a reasonable doubt that Appellant
was the same person who committed the aggravated robbery of the Dairy Queen on the night in
question. Therefore, we hold that the evidence was legally sufficient to support the jury’s verdict. 
Appellant’s third issue is overruled.
Factual Sufficiency
            Turning to Appellant’s contention that the evidence is not factually sufficient to support the
jury’s verdict, we must first assume that the evidence is legally sufficient under the Jackson
standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all
of the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute
and compare it to the evidence that tends to disprove that fact. See Santellan v. State, 939 S.W.2d
155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the jury’s
determination, even if probative evidence exists that supports the verdict, see Clewis, 922 S.W.2d
at 133, our evaluation should not substantially intrude upon the jury’s role as the sole judge of the
weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where there is
conflicting evidence, the jury’s verdict on such matters is generally regarded as conclusive. See Van
Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref’d). Ultimately, we must ask
whether a neutral review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).


 
            A verdict will be set aside “only if the evidence supporting guilt is so obviously weak, or the
contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust.” Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see 
 Sims v. State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). A clearly wrong and manifestly unjust
verdict occurs where the jury's finding “shocks the conscience,” or “clearly demonstrates bias.”
Zuniga, 144 S.W.3d at 481.
            As the court of criminal appeals explained in Zuniga, "There is only one question to be
answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a
jury rationally justified in its finding of guilt beyond a reasonable doubt?” See id. at 484. 
            In the case at hand, Appellant argues that Hudson’s identification of Appellant as the
perpetrator is “so suspect that it cannot form the sole basis for conviction.” Yet, even assuming, as
Appellant suggests, that Hudson’s testimony cannot alone support a conviction, Appellant fails to
take into consideration the identity evidence concerning the Subway robbery.
            We have reviewed the record in its entirety. We iterate that our evaluation should not
substantially intrude upon the jury’s role as the sole judge of the weight and credibility of witness
testimony, see Santellan, 939 S.W.2d at 164, and where there is conflicting evidence, the jury’s
verdict on such matters is generally regarded as conclusive. See Van Zandt, 932 S.W.2d at 96. 
            Our review of the record as a whole, with consideration given to all of the evidence, both for
and against the jury’s finding, has not revealed to us any evidence that causes us to conclude that the
proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to
render Appellant’s conviction clearly wrong or manifestly unjust. Therefore, we hold that the
evidence is factually sufficient to support the jury’s verdict. Appellant’s fourth issue is overruled.
 
Ineffective Assistance of Counsel
            Appellant’s counsel notes in Appellant’s brief that Appellant wanted to raise the issue of
ineffective assistance of counsel. However, Appellant’s counsel concedes that such an issue is
without merit and notes that he will not raise meritless issues. We will consider this issue in
accordance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed.2d 493 (1967) and
Gainous v. State, 436 S.W.2d 137 (Tex. Crim. App. 1969). We have reviewed the record for
reversible error related to ineffective assistance of counsel and have found none.
 
Disposition
            Having overruled Appellant’s issues one, two, three, and four, we affirm the trial court’s
judgment.
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
 
Opinion delivered December 14, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.














(DO NOT PUBLISH)